FRANCIS I. AMORY & others, trustees, *vs.* TRUSTEES OF AMHERST
COLLEGE & others.

Suffolk.   December 3, 4, 1917. — February 27, 1918.

Present: BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Trust,* Construction, Validity, Resulting. *Rule against Perpetuities. Deed,* Con-
struction. *Estates on Condition. Evidence,* Extrinsic affecting writings, Com-
petency. *Equity Jurisdiction,* Statute of limitations, Laches. *Limitations,
Statute of. Agency,* Scope of authority. *Corporation,* Officers and agents.
*Words,* "On this condition."

The owner of certain real estate conveyed it to a college corporation in trust to
use the income for the increase and benefit of a literary and benevolent fund
of the college, previously established by the donor, subject to certain trusts,
among which were requirements that one half of the income of the fund should
be used for purposes of literature and that the other half of the income should
be paid over to the grantor "or his nearest heir" of his name "for the time
being, who shall demand it." *Held,* that the provision as to payment of one half
of the income to the donor "or his nearest heir . . . for the time being" was
void because in violation of the rule against perpetuities. Following *St. Paul's
Church* v. *Attorney General,* 164 Mass. 188.
It also was *held* that the deed created two distinct trusts, one for the benefit of
the college and the other for the benefit of the grantor and certain of his de-
scendants; that the first trust remained valid although the second was invalid,
and that, because of the invalidity of the second trust, the beneficial interest
therein resulted to the grantor.
A deed of certain real estate to a college corporation with a direction that the in-
come should be used for the increase of a certain fund contained recitals that
it was in consideration in part of the grantee assenting to, agreeing and under-
taking to execute "the several trusts hereinafter mentioned," and that the
grantee was to hold "for the following uses and purposes" and "for the follow-
ing uses, trusts, and objects," and "it is hereby declared to be the intention of
the Donor, that the" college and its "Successors, shall be one Party, and that"
the grantee "and his Representatives shall be the other party to the benefits of
said Fund." There also were recitals to the effect that the college was entitled
to one half of the income of the fund "on this condition," that it paid over the
other one half to the donor or a designated heir, and that, if upon demand such
payments were not made, then the fund and the property "shall thereupon be
immediately forfeited to, revert to, and be reinvested in" the grantor "and his
heirs forever." Upon a reading of the entire deed it was *held,* that it was the
intention of the grantor to convey the real estate to the college corporation in
fee simple in trust, and not to create an estate upon a condition subsequent.
Conditions subsequent are not favored in the law, and a deed will not be con-
strued to create an estate on condition unless the language used necessarily

imports a condition or the intent of the grantor to create an estate on condition is indicated clearly and unequivocally.

Declarations and conduct of the officers of the college corporation and of the grantor in the deed above described made after the delivery of the deed and before the death of the grantor were considered in determining what was the meaning of the provisions of the deed which upon their face were doubtful.

In further construction of the deed above described, it was *held* that it plainly appeared that the parties did not intend that a mere use should be created to be executed under the statute, but that the college corporation should take an estate in fee in trust imposing active, diligent and continuing duties upon the trustee.

The statute of limitations will not begin to run to bar the rights of a beneficiary under a resulting trust as against the trustee until the trustee has repudiated the beneficiary's claim openly and notoriously.

In the case of the resulting trust above described, the statute of limitations did not begin to run in favor of the trustee and against the beneficiary at the time of the delivery of the deed creating the trust.

Upon the evidence before a master to whom was referred a bill in equity to enforce a resulting trust in land which had been conveyed to a trustee upon trusts, part of which were invalid, and upon certain facts found by the master, it was *held,* that the trustee to the knowledge of the beneficiary had repudiated the rights of the beneficiary about thirty-nine years before the beginning of the suit and had remained steadfast in that position, and therefore that the suit could not be maintained.

At the hearing by a master of a suit in equity against a college corporation to enforce a resulting trust, in which one of the issues was, whether the defendant had acknowledged the trust within the period of the statute of limitations, the master admitted in evidence letters written by the defendant's treasurer, bookkeeping entries made by him and statements sent by him to a representative of the beneficiary. It appeared that the authority of the treasurer was limited, and that he merely was custodian of the moneys and securities of the college, was empowered to collect term bills and other bills, to pay salaries and, incidentally, to keep proper books in connection therewith. *Held,* that the treasurer had no authority to bind the corporation by his letters, accounts, statements or bookkeeping entries, and that the evidence should not have been admitted.

In the suit above described, it appeared that the defendant repudiated all claims of the beneficiary in 1873 and ever thereafter treated the income of the fund as its own, that no assertion of a claim was made by the beneficiary until 1909 and no suit was brought until 1912. There was no evidence of any disability on the part of the plaintiff or of any of his predecessors in title nor was there apparent any reason for the delay in seeking his rights. Every one familiar with the facts relating to the trust had died. *Held,* that the suit was barred by laches.

By a deed containing many of the same provisions as those above described, a second parcel of land was conveyed to the college corporation with the provision that its income should be used entirely for the purchase of books for the college library until the termination of a lease to which the land was subject, which did not expire until 1928, at which time the income should be divided, one half being directed toward a valid object, and the other half toward one which was invalid. *Held,* that, as to the resulting trust arising under this deed, the statute

of limitations had not begun to run because the time had not yet arrived for the plaintiff to have possession.

It also was *held* that, the plaintiff not yet having a right to possession of this property last referred to, the bill must be dismissed as to that property also.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 1, 1912, against the corporation, the Trustees of Amherst College (hereinafter called Amherst College), David Sears and the Attorney General of the Commonwealth by the trustees under a declaration of trust, known as the David Sears Real Estate Trust, who claimed an undivided one half interest in two parcels of real estate and alleged that they were entitled to an accounting as to rents under the circumstances hereinafter described, as successor to David Sears, by virtue of the twentieth paragraph of his will, placing the residue of his real estate in trust, and a conveyance in 1889 by the trustees under the will through one Minot as a conduit to themselves.

David Sears was the common source of title of both the plaintiffs and the defendant college. The defendant college claimed under two deeds, dated, respectively, 1844 and 1847. The 1844 deed conveyed to Amherst College the legal title of certain property on the corner of Leverett and Barton Streets in Boston, together with the lessor's interest in a lease of that property expiring in 1928. The 1847 deed conveyed to Amherst College the legal title of certain property on Brattle Street in Boston, together with the lessor's interest in a lease of that property expiring in 1919. The plaintiffs contend that the conveyances made by these deeds of 1844 and 1847 to Amherst College were upon certain trusts, that those trusts were invalid in part by reason of an interest in the income given therein to David Sears or his nearest heir by the name of Sears for the time being who shall demand it, which was a violation of the rule against perpetuities, and that a trust resulted to David Sears and his heirs as to an undivided half of the fee of the Leverett Street property, subject to the lease expiring in 1928, and as to an undivided half of the fee of the Brattle Street property, including an undivided half of the lessor's interest in the lease expiring in 1919.

The suit was referred to a master upon the issues other than those relating to an accounting for rent. The material findings of the master, the evidence reported by him and the objections

and exceptions to his report by the defendant Amherst College are described in the opinion. The suit was reserved by *Crosby*, J., upon the pleadings, the master's report and the exceptions thereto, for determination by the full court.

*A. H. Wellman & C. M. Rogerson,* (*S. H. Wellman* with them,) for the Trustees of Amherst College.

*J. E. Hannigan,* guardian *ad litem,* submitted a brief.

*B. Corneau,* ( *W. E. Tucker* with him,) for the plaintiffs.

CROSBY, J.   This is a bill in equity brought by the plaintiffs, who allege that they are the successors in title of the trustees of the residue of the real estate under the will of David Sears, to compel conveyance to them of an undivided half interest in each of two parcels of land in the city of Boston, alleged to be held by the defendants under a trust resulting in favor of David Sears (and the plaintiffs as his successors in title), by reason of the invalidity of certain provisions in the deeds conveying to the trustees of Amherst College the two parcels of land above referred to. The bill also prays for an accounting for one half of the rents received from one of the parcels; but no question is before the court on this prayer of the bill, as the order to the master by whom the case was heard limited the hearing to the questions of title.

The deed of the first parcel above referred to from David Sears to the Trustees of Amherst College is dated July 1, 1844, and conveys what will hereinafter be called the Leverett Street property, together with a lease thereof given to one Luther for one hundred years which will expire in the year 1928. The habendum clause of the deed is as follows:

"To Have and to Hold the same, to the said Trustees of Amherst College, and their Successors forever, for the objects nevertheless, and upon the conditions hereinafter written, — that is to say, to and for the following uses and purposes. In the first place the said Trustees of Amherst College, and their Successors, shall collect and receive the rents and profits of the above described estate, and shall annually during the continuance of the above mentioned lease to Philip Luther, and *no longer,* invest the same in the purchase of Books of General Literature, for the establishment, foundation, and increase of a Library appurtenant to this present endowment and for the use and benefit of the Students

of Amherst College. And on the termination of said lease to Philip Luther in the year of our Lord 1928, the said Trustees of Amherst College, and their successors, shall invest, and forever keep invested the rents and profits of said estate in the manner and for the purposes hereinafter described, and declared, namely, in some Funded, or Bank, or Insurance, or Rail Road Stock, or in other corporate property, or public securities, or in Mortgages, or in productive real estate, to increase and accumulate the permanent Capital of a Literary and Benevolent Fund, which the said David Sears, does by these presents create, found, and establish.

"And to give immediate activity to said Fund, and in addition to the grant of the above described estate the said David Sears with these presents also gives and pays over to the said Trustees of Amherst College the sum of Five thousand dollars, which they hereby acknowledge to have received, and do by [the acceptance of] these presents promise to invest as the commencement and foundation of said Fund subject to the conditions & limitations, and for the uses and objects in this deed recited and declared, and for the following uses, trusts, and objects namely, The said Trustees of Amherst College will immediately invest the said Five thousand dollars in some of the above named securities, and the same with its income and accumulations again invest, and keep invested, so as to constitute and make together with the above described Leverett and Barton Street estate, a Permanent Fund, under the above name of Literary and Benevolent. And the annual income of said Fund is to be invested and added to the Principal annually, between the months of July and January, to form a new Permanent Capital of said Fund, and when invested is not afterwards to be expended or used.—But in any year before the annual income is so invested, the parties who have the right, may demand, and shall receive their part of said income to be expended in such objects as to them may be most desirable, — without appeal, — and in such years, that half only of said annual income, not demanded, shall be funded.

"And it is hereby declared to be the intention of the Donor, that the said Trustees of Amherst College, and their Successors, shall be one Party, and that David Sears, the Founder of said

Fund, and his Representatives shall be the other party to the benefits of said Fund. And the Trustees of Amherst College, and their Successors, are hereby authorized and empowered to receive and expend the one half part of said annual income of said Fund in *such purposes of Literature*, without restriction, as they may deem most desirable, and including a right to build at their pleasure for the use and benefit of the Fund. Provided always, and they are entitled to half the income on this condition, that they pay over the other half part of said annual income, when demanded, to said David Sears and his Representatives designated and described in certain deeds of said David Sears to the Wardens and Vestry of St Pauls Church in Boston, dated in the year 1821, and establishing a Fund for Charitable and other uses. And if at any time hereafter it should so happen from any cause whatever that said income cannot be so paid over, or that any of said parties should be prevented, or prohibited, or in any way debarred from their several rights, or, if any of said parties as they become entitled to said income from said Fund should not receive the same within one year after demand thereof, then, and in each or either of said cases, the property conveyed by this deed, and the Fund herein referred to and established, together with all the property of every sort and description, which said Fund now has, or may hereafter become possessed of, shall thereupon be immediately forfeited to, revert to, and be reinvested in said David Sears and his heirs forever."

The deeds from Sears to the wardens and vestry of St. Paul's Church, dated 1821 and above referred to in the deed from Sears, provided that the rentals of the pews conveyed by these deeds should be applied to the accumulation of a permanent fund; and that the wardens and vestry "shall pay over to said Sears, or his nearest heir, by the name of Sears, for the time being, who shall demand it, the one half of said income [i. e., the income of the St. Paul's Church fund], for his, or her use and benefit, that is to say, any heir of said Sears, of his name, who may demand the said one half of said income, shall be entitled to receive it, but his or her right to it shall be superseded and annulled, whenever a nearer heir of the same name shall make a similar demand." By a subsequent deed to the same grantees he defined the phrase "nearest heir" as used in that and previous deeds, as being in

general to the effect that the eldest of male descendants should be preferred.

The second deed from Sears to the Trustees of Amherst College is dated September 1, 1847, and conveys a parcel of land situated in the city of Boston, hereinafter called the Brattle Street property. It also conveys and assigns to the grantees a lease of the land described to one Hinckley for one hundred years, which will expire in the year 1919. This deed referred to the earlier deed and to the undertaking of the grantees "to perform the several conditions, and comply with the several restrictions, and limitations, and execute the several trusts, uses, and objects, contained in this deed, in addition to, and in completion of their contract with said Sears, as the same appears recorded in said deed of the first of July 1844. . . . And the annual income received from the estate hereby granted, is forever to be a source, and afford a supply, — as a river affords a supply of water to the ocean, — by which the capital of said fund is to be annually increased, — and subject to the conditions, restrictions, limitations, and divisions of income, and forfeiture of said fund forever, — the same to be deemed and taken as a part of the original trust."

It will therefore be observed that, by the deed given in 1844, the entire rent received was to be expended by the college in the purchase of books during the term of the lease. This part of the gift is admitted to be valid. After the termination of the lease in 1928, the rents and profits are to be invested in securities to increase the permanent capital of a "Literary and Benevolent Fund," created by this deed and by a gift to the college of $5,000, acknowledged in the first deed to have been received. One half of the income of the fund so established is to be invested and added to the principal annually, between the months of July and January, unless demanded by Sears or his representatives; the college being authorized to expend one half of the fund for the purposes of literature provided it paid over the other half, if demanded, to Sears or his nearest heir by the name of Sears for the time being, as described in the deeds of Sears to the wardens and vestry of St. Paul's Church, dated in the year 1821 and above referred to. The deed of 1844 also provides that if one half the income is not paid over to the parties entitled thereto,

within one year after demand, the property conveyed and the fund established shall be immediately "forfeited to, revert to, and be reinvested in said David Sears and his heirs forever." No claim of forfeiture under the foregoing provision is made by the plaintiffs. And as the term of the lease has not expired, they do not contend that they are entitled to any rents or profits received from the Leverett Street property.

The second deed, dated September 1, 1847, conveyed the Brattle Street property to be held for the increase and benefit of the Literary and Benevolent Fund, created by the deed of 1844. The rents and profits are to be invested to increase the principal of the fund and become a part of it, "subject to the conditions, restrictions, limitations, and divisions of income, and forfeiture of said fund forever, — the same to be deemed and taken as a part of the original trust." The entire income from this property has been added annually to the capital of the fund in accordance with the direction in the deed. Of the income from the capital of the fund, the college has received one half and the other half has been added to capital. The fund, by reason of the addition of one half of its income and of all the rents received from the Brattle Street property, has increased greatly in amount. The plaintiffs make no claim to the fund as such; as they are trustees only of the residuary real estate of David Sears, the grantor, they have no claim except to land and rent therefrom. In this suit they pray for an accounting for rents and profits received from the Brattle Street property since 1909, when they contend that they demanded the same. They also claim title to one undivided half of the fee in the Brattle Street property, and one undivided half of the reversionary interest in the Leverett Street property remaining after the termination of the lease to Luther.

In the case of *St. Paul's Church* v. *Attorney General*, 164 Mass. 188, upon which the plaintiffs largely rely, it was held that, in the deeds from David Sears above referred to conveying six pews to the wardens and vestry of St. Paul's Church, the provision for the payment of one half of the annual income of pew rents to Sears, the grantor, or his eldest male heir, on demand, was contrary to the rule against perpetuities, and that there was a resulting trust to the grantor and his heirs. That case is decisive of the present case in holding that the provision for the payments

to the grantor or his eldest male heir is contrary to the rule against perpetuities. The decision in that case also is decisive upon the question whether there is a resulting trust in the case at bar, unless the present case can be distinguished from the St. Paul's Church case on the ground that the differences in the deeds render that decision inapplicable. The differences which are principally relied on by the defendants in support of their contention are that the St. Paul's Church case was a bill for instructions brought by the plaintiffs as trustees, that the deeds there considered did not contain apt words to create a gift on condition with a right of entry for breach thereof, that the deeds considered in that case differ radically in language and in the intent expressed, and finally, that a different rule applies to a conveyance of real estate than applies to a conveyance of church pews.

We are of opinion that the differences in the deeds do not lead to any different results; and that the deeds under consideration, like the deeds in the St. Paul's Church case, must be construed as creating a resulting trust in Sears and his descendants in one half of each of the two parcels of land conveyed to the defendants.

It is plain that the gifts to the trustees for the uses of Amherst College created a valid charitable trust. It is equally plain that the accumulation of funds for the benefit of the grantor and his descendants named, was an invalid trust, the beneficial interest in which resulted to the donor. *St. Paul's Church* v. *Attorney General, supra.* *Nichols* v. *Allen,* 130 Mass. 211. The deeds properly construed created two distinct trusts: one for the benefit of the college, the other for the benefit of the grantor and his descendants named. The former was valid; the latter was invalid. *Dexter* v. *Harvard College,* 176 Mass. 192. *St. Paul's Church* v. *Attorney General, supra.* That a charitable gift was intended appears from the deeds. Accordingly the trust in favor of the college will be supported although the trust for the grantor and his representatives fails. *Jackson* v. *Phillips,* 14 Allen, 539, 556. *Sorresby* v. *Hollins,* 9 Mod. 221. *Curtis* v. *Hutton,* 14 Ves. 537. As the trust for the benefit of Sears and his heirs was invalid, the beneficial interest therein resulted to him. *Easterbrooks* v. *Tillinghast,* 5 Gray, 17, 21. *Nichols* v. *Allen, ubi supra. Olliffe* v. *Wells,* 130 Mass. 221. *St. Paul's Church* v. *Attorney General, supra.*

*Teele* v. *Bishop of Derry*, 168 Mass. 341. *Minot* v. *Attorney General*, 189 Mass. 176, 180. *Wilcox* v. *Attorney General*, 207 Mass. 198, 200.

The defendants do not deny that the provision in the deeds for Sears and his representatives violates the rule against perpetuities and is void to that extent, but they contend that, even if invalid in that respect, the deeds convey valid gifts of the lands therein described to the college; that the legal title so conveyed was a fee simple conditional, and that the condition and the right of entry have both disappeared, thus cutting off all right of the plaintiffs. In other words, it is the contention of the defendants that Sears intended to make a single completed gift to the college for its benefit, and to impose upon that gift provisions for the benefit of himself and his representatives; that the deeds conveyed both parcels to the trustees in fee simple subject to a common law condition, which has been discharged, and the property is held by the grantees and their successors free from any claim by the plaintiffs, or by Sears or his nearest heir by the name of Sears as above defined, or by his heirs at law or any other person. An important question is raised by this contention, similar to one referred to, but not decided, in the St. Paul's Church case. Undoubtedly there is language in the deeds which, taken by itself, would warrant the inference that it was the intention of the grantor to make gifts subject to a condition subsequent. *Brattle Square Church* v. *Grant*, 3 Gray, 142. But such, however, is not the necessary inference. In order to determine the true meaning of these deeds, they must be interpreted in view of all the language used to explain the intention of the grantor. *Episcopal City Mission* v. *Appleton*, 117 Mass. 326. *Sohier* v. *Trinity Church*, 109 Mass. 1. The words "on this condition," and in the provision relating to forfeiture in case of failure to pay when demanded, are words ordinarily used to create a condition, a breach of which will result in a forfeiture of the estate. But such will not be the effect if, taking the deeds as a whole, a contrary intention is manifested by the grantor. *McElroy* v. *McElroy*, 113 Mass. 509.

In the deed of 1844 it is recited that the real estate is conveyed in consideration in part of the grantees assenting to, agreeing and undertaking to execute "the several trusts hereinafter mentioned,"

and that the grantees are to hold "for the following uses and purposes," and "for the following uses, trusts, and objects," and "it is hereby declared to be the intention of the Donor, that the said Trustees of Amherst College, and their Successors, shall be one Party, and that David Sears, the Founder of said Fund, and his Representatives shall be the other party to the benefits of said Fund." The deed of 1847 recites that the conveyance is made in part in consideration of the grantees assenting to and agreeing to "execute the several trusts, uses, and objects, contained in this deed," and that "the same [is] to be deemed and taken as a part of the original trust." The foregoing and other language found in the deeds, together with the deeds as a whole, and especially in view of the objects sought to be accomplished, make it plain that it was the intention of the grantor to establish a trust rather than to convey the lands in fee subject to a common law condition. *Sohier* v. *Trinity Church, supra. Rawson* v. *Uxbridge School District,* 7 Allen, 125, 128. *Brattle Square Church* v. *Grant, supra. Austin* v. *Cambridgeport Parish,* 21 Pick. 215.

In *Rawson* v. *Uxbridge School District, supra,* it was said, "A deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, *ex proprio vigore,* imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. Conditions subsequent are not favored in law. If it be doubtful whether a clause in a deed be a covenant or a condition, courts of law will always incline against the latter construction. Conditions are not to be raised readily by inference or argument."

The evidence shows that the college accepted the property and administered it in accordance with the terms of the deeds until as late as at least 1871, when David Sears died, without raising any question as to the existence of a trust, and during all this period the letters from Sears to the representatives of the college show that he assumed and understood that such a trust had been created; and the master so finds. This finding was warranted. We do not mean to intimate that the true construction of the deeds, had it been expressed in clear and certain language, could be affected by letters written afterwards by Mr. Sears. It is well settled, however, that evidence of the construction put upon deeds

by the parties for a long period of time is entitled to weight. *Reynolds* v. *Boston Rubber Co.* 160 Mass. 240, 245, and cases cited. *Dakin* v. *Savage*, 172 Mass. 23, 27. Moreover, it is plain in this case, as in the St. Paul's Church case, that the trustees of the college admitted and recognized the existence of a trust as to the income of one half of the fund created for the benefit of the grantor and his representatives, up to at least the time of his death. During that long interval they made no claim that title was held adversely in themselves, but acted consistently with the view that they held in a trust capacity. At all times during the lifetime of the grantor, the conduct of the trustees shows that they believed the property to be held in trust, and it is apparent that Mr. Sears relied upon their acts and understood that it was so held, up to the time of his death.

As the deeds showed that the declared trusts were invalid because contrary to the rule against perpetuities, the college held with the assent of the grantor for different beneficiaries than those described in the deeds. This fact does not affect the validity of the trust. As was said by this court in the St. Paul's Church case, 164 Mass. 188, at page 200, "Where the possession of property is held by a trustee not by virtue of any personal right or personally asserted right on his part, but is colored by a trust and confidence in virtue of which he received it, the identity of the *cestui que trust* is of very little importance, but the relationship is all important; and, so long as the relation of trust exists, it is a case of express trust, no matter who the *cestui que trust* may prove to be." *Patrick* v. *Simpson*, 24 Q. B. D. 128. *Warner* v. *Morse*, 149 Mass. 400. *Robinson* v. *Hook*, 4 Mason, 139, 152. *Cholmondeley* v. *Clinton*, 2 Jac. & W. 1.

It is also the contention of the defendants that any use resulting to Sears, the grantor, was executed by the statute of uses into a legal estate which has long since been barred by the statute of limitations. It is well settled in this Commonwealth that, whatever the form of conveyance, a deed should be so construed as to carry out the intent of the parties unless such construction is manifestly repugnant to the terms of the grant. *Dakin* v. *Savage*, 172 Mass. 23. *Carr* v. *Richardson*, 157 Mass. 576. It is unnecessary to consider the many fine and sometimes shadowy distinctions that have been made between uses and trusts under the

statute of uses, because we are of opinion that by each of the deeds in question it plainly appears the parties intended that the Trustees of Amherst College should take an estate in fee in trust and did not intend to create a mere use to be executed under the statute. The trust so created by these deeds reposed active, diligent and continuing duties in the trustee for the benefit of the grantor and his representatives, and clearly distinguishes the present case from those where a use declared is executed under the statute. Under such circumstances, the remedy of the *cestui que trust* to secure compliance with the trust is in equity. *Holland* v. *Cruft*, 3 Gray, 162, 175. *Richardson* v. *Stodder*, 100 Mass. 528. *Carr* v. *Richardson, supra.* *Packard* v. *Old Colony Railroad*, 168 Mass. 92. *Lima* v. *Cook*, 197 Mass. 11, 15. In view of the conclusion reached, that the deeds did not convey the property to the grantee subject to a common law condition, it follows that the conveyance from the trustees under the twentieth clause of the will to Minot in 1889, and before any breach of the condition and before entry, did not discharge the condition and vest in the college an absolute title in fee simple within the rule as stated in *Rice* v. *Boston & Worcester Railroad*, 12 Allen, 141. The college held by virtue of an express trust which it fully recognized and never repudiated during the lifetime of David Sears, the grantor. Nor can we agree with the contention that a merely dry and passive trust was created, and that therefore the right to enforce it has long since been barred by the statute of limitations.

The distinction between an express and an implied trust in this respect is well settled. As to an express trust, the statute will not run against the *cestui que trust* in favor of the trustee, unless the latter has openly and notoriously repudiated the claim of the former; while in the case of an implied trust the rule ordinarily is different. *Davis* v. *Coburn*, 128 Mass. 377. *Currier* v. *Studley*, 159 Mass. 17, 19, 20. *Sawyer* v. *Cook*, 188 Mass. 163. *Lufkin* v. *Jakeman*, 188 Mass. 528, 530. *Greenfield Savings Bank* v. *Abercrombie*, 211 Mass. 252. *Allen* v. *Stewart*, 214 Mass. 109. In the case at bar, the trust being an express, active and continuing trust, would prevent the running of the statute from the date of the delivery of the deeds. The duties of the trustees thereunder were to collect the rents, to pay over when demanded to the *cestuis que trust* one half of the income, and to make investments,

in accordance with the terms of the deeds, of the amount remaining; the right of Sears and his representatives to demand one half of the income to continue indefinitely, and that the college recognized its obligation to do these things, make it plain that it was an express, continuing, and active trust rather than one merely naked and passive in character, where the trustee has no duties to perform and simply holds the legal title. *St. Paul's Church* v. *Attorney General, supra. Salter* v. *Cavanagh,* 1 Dr. & Wal. 668. The case of *Churcher* v. *Martin,* 42 Ch. D. 312, cited by the defendants, is distinguishable from the case at bar.

The action of the trustees in collecting rents and applying them to purposes of the college was not adverse to the beneficiaries of the trust, but was in strict compliance therewith as understood by all parties in interest during the lifetime of the donor. David Sears never made demand for any of the income of the fund up to the time of his death — January 14, 1871. And the college raised no question as to the validity of those provisions of the deeds now agreed to be invalid, but assumed the existence of a trust and the validity of its provisions. Mr. Sears left several sons. The eldest, named David Sears, after the death of his father, made two demands for the payment of that portion of the income to which, assuming the provisions of the deeds of 1844 and 1847 to be valid, he was entitled. The first, made by letter dated July 10, 1872, and repeated by letter dated January 14, 1873, was afterwards waived. The second, was made by letter dated March 8, 1873, — six days before his death. No other demands were made upon the college for the payment of income until that of 1911 (hereafter spoken of) was made.

The first demand above referred to was originally contained in a letter directed to Edward Dickinson, the treasurer of the college; but it then was understood to be merely an inquiry, and was repeated later. At that time William A. Stearns was president of the college, and the letter was called to his attention. President Stearns wrote to Alpheus Hardy, a trustee of the college and a member of the finance committee, concerning the demand so made. His letter cannot be found; but one, dated January 31, 1873, evidently written by Hardy in reply, is in evidence, and states that the writer had seen Mr. Sears and that the latter "only asks,

as I understand him, the half of the interest for this year, and on, if he so elects." From this letter it is apparent that Hardy was satisfied that the demand of Sears was for future income and did not apply to that for the year ending July 31, 1872. That such was the nature of the demand made by Sears is confirmed by the letter of Hardy to President Stearns dated February 3, 1873, in which he wrote that he has seen Mr. Sears who "is in no hurry, he only wanted to name a date from which he should claim half the income." This construction of the nature of Sears's demand is also confirmed by his (Sears's) letter of March 8, 1873, to Treasurer Dickinson, which reads: "I request, that when the income is determined for this financial year, you will remit me the half of it." This plainly was a demand for future income, and raised the question whether the estate of the second David Sears was entitled, he having died on March 14, 1873. After his death, Mr. Hardy saw C. U. Cotting, administrator of the estate of the second David Sears, and wrote to the president of the college a letter dated May 7, 1873, as follows: "I saw Mr. Cotting this morning and convinced him that the late Mr. David Sears had no claim on our College for div'd in July — none having matured. I doubt if his son or heirs can legally call and doubt if he attempts it." No such claim was included in the inventory of the estate of David Sears, Jr., or accounted for by Cotting as administrator, and no payment of such income was ever made.

The evidence shows that Cotting acted as real estate agent for Sears, the grantor, when the two parcels of real estate out of which this controversy arises were conveyed to the trustees. He also acted in that capacity for the college and continued so to act until his death in 1903. After the death of the grantor, Cotting, as real estate agent, represented the trustees under the twentieth clause of the will of Mr. Sears, (through whom the plaintiffs claim,) and all of Sears's living descendants; and as previously stated, he was administrator of the estate of David Sears, Jr. Moreover, he was one of the original trustees of the trust of which the plaintiffs are members, and was its managing trustee until 1902. By reason of the various capacities in which he acted, he was without doubt thoroughly familiar with the relations between the college and the Sears family, the real estate in question, and all the parties in interest; we are satisfied that, in view of all the evidence as shown

by the record, Cotting· was fully authorized to act for whoever was entitled to make demand for income from the college; in fact, such a demand was so made by him in his letter to treasurer Dickinson dated May 29, 1875.

And it is equally plain that Mr. Hardy, who during the period above referred to was a trustee of the college and a member of its finance committee and was in communication with the president of the college, as shown by the correspondence, was fully authorized to act for the trustees, with reference to the demand made by David Sears, Jr.

In view of the correspondence, the repeated conferences between Hardy, representing the college, and Sears, Jr., and with Cotting, and the entire evidence, the only reasonable inference to be drawn is that the college as early as at least the year 1873 had refused to recognize any demand made for the payment of income, and had taken the position that no one was entitled to such income other than the college itself. There is much evidence to show that Cotting, representing the Sears heirs, was inclined to agree with the view taken by the college, that it was not so chargeable. However that may be, it is plain that Cotting had notice of the position taken by the college; he had notice that no claim for income would be recognized, and that no demand therefor would be complied with, at least without litigation. It follows that there was a repudiation of the trust, and the assertion by the college of an adverse claim of which the *cestuis que trust* are chargeable with notice. In these circumstances, the statute of limitations began to run in favor of the trustees from the time they asserted adverse title with knowledge of the *cestuis*, unless the evidence shows that the college subsequently recognized the claim of the Sears heirs to demand a share of such income. *St. Paul's Church* v. *Attorney General, supra. Attorney General* v. *Federal Street Meeting-house,* 3 Gray, 1, 63.

The only facts in dispute before the master related to the questions whether the plaintiffs' demand was barred by the statute of limitations or by laches.

While it is well settled that the finding of a master, who heard the witnesses and had an opportunity to judge of their credibility, will not be set aside unless plainly wrong, that rule does not apply in this case, — where the entire admissible evidence is documen-

tary and undisputed, and is all before the court.  Under such cir-
cumstances it is the right and duty of the court to decide the case
upon the whole evidence.  *Harvey-Watts Co.* v. *Worcester Umbrella
Co.* 193 Mass. 138.  *Old Corner Book Store* v. *Upham,* 194 Mass.
101, 106.  *Rioux* v. *Cronin,* 222 Mass. 131, 134.

It is the contention of the plaintiffs that the college recognized
the validity of the trust as late as 1883, and that there never has
been any repudiation of it.  On May 29, 1875, Cotting wrote to
Treasurer Dickinson, "Since the death of Mr. David Sears the
younger, there may be some question as to who should receive
this Income, and as to the Fund generally, will you therefore con-
sider that the one half of the Income is demanded from time to
time by the Heirs and representatives of Mr. Sears and hold it
until it is determined who is entitled to receive it."  Later there
was other correspondence between Cotting and Dickinson, and
financial statements were sent by Dickinson to Cotting.  On June
11, 1875, Hardy wrote to the president of the college as follows:
"Yours of the 9th at hand.  Enclosed are copies of all my letters
relating to the Sears question, which is all I can say, except this,
Mr. Cotting when talking with me regarding the question, after
Mr. Sears' * death, gave me the impression that the *right* to *claim,*
on the part of Mr. David Sears Sen's heirs, died with the death of
Mr. D. Sears Jr.  That however is a legal question about which
*lawyers* may disagree. . . ."  On October 13, 1875, Cotting wrote
Dickinson for a definite answer to his letter of May 29, and Dick-
inson replied that he would refer the matter to the trustees, who
would probably appoint a committee to confer with Cotting.  He
afterwards wrote Cotting that such a committee had been ap-
pointed; and several times, he arranged for the committee or
President Stearns or himself to meet Mr. Cotting.  There is
no record of the appointment of such a committee, nor is
there any evidence of who were on it or that it, or any one
authorized to represent the college, ever had a conference with
Cotting upon the subject matter referred to in his letter of
May 29.

In 1876 Dickinson wrote Cotting and sent him a statement of
the account of the fund which includes the item "½ income for

---

* The initials D S Jr are interlined above the words Mr. Sears.

the year ending July 1, 1875 $574.47 subject to order of Mr. Sears' heirs." During the years 1877 and 1878, one half the yearly income appears in the accounts as a balance on hand.

In January, 1879, a new account was opened by the treasurer entitled "Sears Cash Capital and Sears Brattle Street Fund Supplement." To this account were credited annually, one half of the income from the "Sears Cash Capital Fund" which previously had been added to the capital of that fund, and one half of the income from the "Brattle Street Fund" which previously had been added to that fund. It appears, as stated by the master, that when this new account was opened in January, 1879, there were transferred to it a sum equivalent to one half of the income of the "Sears Cash Capital Fund" for the preceding four years, and a sum equivalent to one half of the income from the "Brattle Street Fund" for the preceding four years. These items were taken from the respective income accounts of the "Sears Cash Capital Fund" and the "Brattle Street Fund," where, for the four preceding years, they had been carried forward as income balances instead of being added as usual to capital. The new account opened in 1879, was closed out in 1883 under the direction of the trustees of the college by the following vote:

"'Voted that the "Sears Cash Capital & Brattle Street Supplement Fund" so called, be merged with the respective funds from which it was derived according to the contributions of each, excepting such part thereof "with its accumulations" as might have been expended for current annual expenses.'"

The effect of the change in 1883 was to put back the items where they would have been if the new account had never been opened. There is no evidence that Mr. Cotting or the Sears heirs ever knew of the new account which was kept from 1879 to 1883; nor is there evidence that the trustees of the college authorized the opening of this account, or were aware of its existence until it was ordered closed by their vote in 1883. Annual accounts of the fund were sent by the treasurer to Cotting from 1875 until 1880 (except for the year 1879). From 1880 down to 1911 no accounts have been rendered and no demand has been made upon the college by any one, nor has any inquiry concerning the fund been made during that period. The first intimation of a claim upon

the college by the plaintiffs is contained in a letter dated June 10, 1909, stating in substance that claim would be made; thereafter, on September 27, 1911, the plaintiffs demanded one half of the fee in each of the two parcels of real estate in question, and this suit was brought in 1912.

The letters written by Dickinson, as well as the bookkeeping entries made by him and the statements sent by him to Cotting, were admitted by the master subject to the exception of the defendants. All this evidence was inadmissible and should have been excluded. There is nothing to indicate that these matters were ever brought to the attention of the trustees or were known by any one authorized to act for the college. The by-laws show that Dickinson's authority was limited. He was custodian of the moneys and securities of the college and was empowered to collect term bills and other bills, to pay salaries, and, incidentally, to keep proper books in connection therewith. He was not a trustee and had no authority to bind the college by the letters, accounts, and bookkeeping entries above referred to; and there is no evidence that his acts were ever ratified by the college. *Craig Silver Co.* v. *Smith*, 163 Mass. 262. Cook on Corp. § 717.

Apart from the Dickinson letters, bookkeeping entries, and accounts sent to Cotting (and which were improperly admitted), nothing warrants a finding that the college, since 1873, ever recognized its liability to account to the Sears heirs or any one else for any part of the trust fund. The evidence shows that during that year the college repudiated the trust, and that such action was known by Cotting who acted for the *cestuis que trust.* It follows that the plaintiffs' demand has long since been barred by the statute of limitations.

There is no evidence that any accounts were rendered after 1880, or that any communication, verbal or written, was received from any one until the letter of 1909 was sent by the plaintiffs' agent to the trustees. It therefore appears that for nearly twenty-nine years all intercourse between the parties had ceased, during which time the college had openly remained in full possession of the property and had appropriated for its own uses all the income therefrom. As the testimony offered to rebut repudiation of the trust was inadmissible, it follows that the statute of limitations began to run when in 1873 the college denied its liability to

account, and Cotting as representative of the Sears heirs had notice of such action.

Aside from the statute of limitations, we are of opinion that the plaintiffs' claim is barred by laches. No claim was made by them until 1909, no formal demand was made until 1911, and this suit was not brought until the following year. There is no evidence that the plaintiffs or their predecessors labored under any disability at any time. The testimony shows that every one who was familiar with the facts concerning the trust or matters connected therewith has deceased, that many of the corporate records, books of account, and treasurer's books have been destroyed by fires which occurred in 1882 and 1888, that in the meantime the position of the college has been changed, and that the property has greatly increased in value. In view of these facts, and as the college has not since 1873 recognized the trust but has treated the property as if no such trust existed, and no cause appears for the great delay on the part of the plaintiffs and their predecessors in asserting their claim, they are shown to be guilty of laches, which bars them from equitable relief. *Sawyer* v. *Cook*, 188 Mass. 163. *Doane* v. *Preston*, 183 Mass. 569. *Speidel* v. *Henrici*, 120 U. S. 377, 387. *Hammond* v. *Hopkins*, 143 U. S. 224. *Patterson* v. *Hewitt*, 195 U. S. 309. *Cholmondeley* v. *Clinton*, 2 Jac. & W. 1, 175.

Although the statute of limitations and laches constitute a bar to the maintenance of the bill for the recovery of either an undivided half part of the Brattle Street property or any part of the income therefrom, it does not follow that the trust is terminated as to the Leverett Street property. That property still remains subject to a resulting trust in favor of the plaintiffs, who will not be entitled to any part of the income therefrom until the expiration of the Luther lease in 1928; it being provided in the deed from Sears to the trustees given in 1844 that the college is entitled to receive the whole of the rents from this property for the purchase of books for the college library during the term of the lease. Consequently, there never has been a time when the plaintiffs or their predecessors were entitled to recover any portion of such rents. And as the right of possession has not accrued the statutory period of limitation has not begun to run. R. L. c. 202, §§ 20–30.

The defendants saved forty-four exceptions to the master's

report, to his findings, and to the admission and exclusion of evidence. They need not be considered in detail. Exceptions nine to twenty-nine inclusive, relating to the admission in evidence of the letters exchanged between Dickinson and Cotting, the bookkeeping entries kept by Dickinson, and the accounts sent by him to Cotting, are sustained for the reasons previously stated. The exceptions which are contrary to the conclusions we have reached, are overruled. The others have become immaterial.

It follows that the entry must be

*Bill dismissed.*