BOSTON AND NORTHERN STREET RAILWAY COMPANY *vs.* ABNER C. GOODELL & others.

Suffolk.    January 9, 1919. — September 10, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Trust,* Resulting. *Limitations,* Statute of. *Laches. Evidence,* Admissions, Of possession of land. *Corporation, Ultra vires.*

In a suit in equity by a street railway corporation, against one who had been the president of the immediate predecessor in title of the plaintiff and a controlling officer of earlier predecessors, to establish a resulting trust in a

parcel of pasture land situated in two towns, which was purchased in the name of the defendant twenty-seven years before the filing of the bill and was paid for by the defendant's check for less than $1,200, there was evidence that the money with which the property was purchased belonged to the predecessor of the plaintiff's predecessor in title and was not furnished by the defendant, that the property always was treated as belonging to the predecessor of the plaintiff and was entered thus on its books with the defendant's knowledge, that it was conveyed with other property to trustees to secure certain bonds of that company, which afterwards were paid, that with the knowledge and consent of the defendant the property was taxed in both towns in which it lay to the plaintiff's predecessor in title, which paid the taxes, that afterwards such taxes were paid by the plaintiff and that the defendant paid no taxes on the land at any time down to the filing of the bill, that the defendant made under oath annually for ten years returns to the railroad commissioners, which included an item stating that the land in question was owned by the plaintiff's predecessor in title and not by the defendant. There also was evidence that the defendant recognized the rights of the plaintiff as the equitable owner of the land and never asserted an adverse title nor attempted to repudiate the trust before the bringing of the bill. There was nothing to show that the defendant ever had possession or occupation of the land. *Held,* that a resulting trust was established and that the defendant, or (the defendant having died) his heirs at law, must be ordered to convey the land to the plaintiff.

In the case above described it also was *held* that, the defendant never having denied the plaintiff's title before the bringing of the bill, the statute of limitations could not have begun to run in his favor.

In the same case it was *held* that on the findings of the master the plaintiff's claim was not barred by laches.

In the same case it was *held* that the entries upon the books of the plaintiff and the returns made to the railroad commissioners were admissible upon the issues whether the defendant claimed any beneficial interest in the property or whether he recognized the plaintiff and its predecessors as its equitable owners.

In the same case it was *held* that the payment by the plaintiff and its predecessors of the taxes on the land was admissible to show that the defendant did not hold the title to the land as owner and that he never claimed to hold adversely to the plaintiff or those under whom it claimed.

In the same case it appeared that the returns filed and sworn to by the defendant contained a statement that the land was "owned by the company, needed in operating road," and it was *held* that this was evidence warranting a finding by the master that the land was owned lawfully by the company and was not held *ultra vires.*

BILL IN EQUITY, brought originally in 1901 and filed as amended on March 30, 1916, by the Boston and Northern Street Railway Company, as the grantee of the Naumkeag Street Railway Company, alleged to be the beneficiary of a resulting trust in a parcel of pasture land in the towns of Hamilton and Topsfield which stood in the name of the defendant Abner C. Goodell, and, after

his death since the filing of the bill, in the names of his heirs at law, praying that the defendant Abner C. Goodell, and now his heirs at law, might be ordered to convey and release all his right, title and interest in such parcel of land and that the defendants Benjamin W. Russell and Zina Goodell might be ordered to convey and release to the plaintiff any title vested in them as trustees under a certain indenture of March 5, 1875, made to secure certain bonds which had been paid.

The case was referred to a master, who made a report containing the findings that are stated in the opinion.

The case was heard by *Jenney*, J. He made an interlocutory decree overruling the exceptions both of the plaintiff and of the defendants to the master's report and confirming the report, and made an order for a final decree ordering the defendants to convey the real estate in question in fee simple to the plaintiff and to pay the plaintiff's costs amounting to $55.33. Thereupon the judge reported the case upon the pleadings, the master's report and the exceptions thereto, the interlocutory decree and the order for the final decree for determination by this court.

The case was argued at the bar in January, 1919, before *Rugg*, C. J., *Braley, Crosby, Pierce,* & *Carroll*, JJ., and afterwards was submitted on briefs to all the Justices.

*B. B. Jones*, (*I. McD. Garfield* with him,) for the plaintiff.

*F. Hutchinson* & *P. B. Smith*, for the defendants.

CROSBY, J. This is a bill in equity brought originally against Abner C. Goodell, Benjamin W. Russell and Zina Goodell. On July 19, 1914, Abner C. Goodell died, and afterwards his widow, Martha P. Goodell, his heirs at law, George H. Goodell and Alfred P. Goodell, and the administrators of his estate were joined as parties defendant. The bill alleges that the plaintiff is the equitable owner of a certain parcel of land situated in the towns of Hamilton and Topsfield in the county of Essex, the record title to which stands in the name of the deceased (hereinafter referred to as Goodell); that it was held by him in trust for the plaintiff, and that the plaintiff is entitled to a conveyance thereof from the widow and heirs at law. The case was referred to a master. Both the plaintiff's and the defendants' exceptions to the master's report were overruled, the report was confirmed, and a final decree was ordered directing the widow and heirs at law to

execute, acknowledge and deliver to the plaintiff, a deed of the real estate described in the bill. The case is before us upon a report of the judge of the Superior Court who ordered the decree to be entered.

The master finds certain facts, hereinafter recited, which we deem material to the decision of the issues presented. It is to be observed, however, that while the report recites certain evidence it does not contain all the evidence; nor is the evidence reported. The master made the following and other findings:

The Salem Street Railway Company was incorporated in 1861 and was operated by that company until 1871, when it leased its road, franchises and property to one Robinson for twenty years at a rental of $100 a year, the lessee agreeing to pay the debts of the lessor. At that time the company was heavily in debt. Goodell, who was a lawyer, was president and a director of the company, Robinson also was a director, and one Mack was treasurer and a director. The railway was operated under the lease until March 8, 1875. In 1873 the land in question was conveyed to Robinson by three deeds which were duly recorded in 1874. The money to pay for the property was supplied by Goodell's check for $1,164.34, dated February 18, 1874. At the time the above described deeds were recorded there also was recorded a deed dated January 1, 1874, from Robinson to Goodell of the same land. It is not disputed that the effect of these four conveyances was to vest the legal title in Goodell. On February 26, 1875, the Naumkeag Street Railway Company was incorporated under St. 1874, c. 260. St. 1885, c. 366. Goodell, Mack and Robinson (with fifteen others) were the incorporators, and all three were elected directors. Goodell, Mack and one Wheatland, the treasurer, constituted the executive committee of the directors. This corporation was organized to acquire an assignment of the Robinson lease and to assume the lessee's debts and liabilities thereunder, and the lease was duly assigned to the company. At about the same time the company voted to issue bonds to meet its liabilities and on March 9, 1875, Goodell executed a deed of the premises in question to five trustees, as security for the payment of the bonds. The deed was ratified by vote of the directors passed on the same date. Except for this deed, the record title to the land remained in Goodell during the entire time he was an

officer of the railway company, that is, from January 1, 1874, to June 13, 1884, when he resigned. With the exception of a reconveyance from two of the trustees to him in 1895, the record title was not affected up to the time of the bringing of this suit. The railway continued to be owned and operated by the Naumkeag Street Railway Company until March 7, 1893, when it was conveyed by deed of that date to its successor, the Lynn and Boston Railroad Company. St. 1881, c. 152. Whether this deed conveyed the land described in the bill is disputed by the defendants. The description in the deed so far as it relates to the land in question is as follows: "together with any and all real estate wherever the same may be situate belonging to said Naumkeag Street Railway Company; also the land conveyed to said grantor by deed of James P. Robinson and Abner C. Goodell, Jr., dated June 1, 1874 and recorded in said registry Book 898, Leaf 112." It is admitted that the name of the Lynn and Boston Railroad Company has been changed to that of the present plaintiff.

Before the year 1895 the bonds secured by the conveyance from Goodell to the trustees had been paid, and two of the surviving trustees reconveyed the land to Goodell by deed dated May 13, 1895; on May 15, 1911 (some of the trustees having previously deceased), Benjamin W. Russell executed a deed of the land to Goodell, which deed contains a recital that the grantor is the sole survivor of the trustees who had not already conveyed his interest.

The foregoing is a recital of the facts found by the master respecting the title to the land which the plaintiff seeks to recover. He also found the following facts bearing upon the contentions of the parties: that there was no direct testimony from any person named in any of the conveyances as to the facts and the circumstances surrounding them, but the plaintiff offered certain evidence of acts and conduct of Goodell, and records and books the various companies kept while he was an officer; that he was, and for many years had been, the president and managing director of the Salem Street Railway Company; that during the period when the property was operated by Robinson, the lessee, Goodell and Mack had more to do with operating the road than Robinson; that Goodell was very active in raising money and supervising the operation of the road; that on the organization of the Naum-

keag Street Railway Company he took a prominent part; that the records of the corporation showed that he voted on all the resolutions authorizing the various conveyances made on or about March 8, 1875; that he acquiesced in and assented to all the arrangements made at that time; that from 1875 to June 30, 1884, he owned a large interest in, and was a director and most of the time president of, the Naumkeag Street Railway Company; that he had access to its books, examined them frequently, if not daily, and to some extent supervised the bookkeeping; that under these circumstances certain entries were made; that there were entries in the books of taxes paid by the company to the towns of Hamilton and Topsfield for the years 1876 to 1879, both inclusive, and for 1881; that during all this period there was no evidence to show that the company owned any land in Hamilton or Topsfield aside from the land in question; that there appeared in the ledger under the heading "'Land Account No. 41,' 1875, Mar. 8. To O. Surplus, $1200. with a cross reference to page 3 of the day book. The entry on page 3 of the day book is, — Land Account No. 41, Pasture Land in Topsfield and Hamilton, $1200.;" that the words "O. Surplus" mean original surplus. The master found that these entries in the books kept under Goodell's frequent inspection, and to some extent under his direction, showed that on March 8, 1875, he knew the company claimed the land as its property and so carried it on its books; that no books of account or records kept before the organization of the Naumkeag Street Railway Company in 1875, and no books or records of the Salem Street Railway Company or Robinson, lessee, were introduced in evidence.

On the day book of the company the following entries appear: "'Naumkeag St. Ry. Co. Sept. 30, 1880. Wm. Mack, Tr. Dr. To A. C. Goodell, Jr. $1200. For land in Topsfield and Hamilton (pasture) conveyed by A. C. G. Jr. to trustees to secure bonds N. S. R. Co. 1875 for a nominal consideration, he having been charged with the original purchase money in his account before the N. S. R. Co. was incorporated, $1200." It is found that this entry, which was made with Goodell's knowledge, has a cross reference to page 477 of the day book and refers to ledger pages 198 and 207. On page 198 under the heading "Wm. Mack Trust" is entered "Sept. 30, 1880, Wm. Mack Trust To A. C.

G. Jr. $1200." On page 207 appears the ledger account of A. C. Goodell, Jr., and on the credit side under date of Sept. 30, 1880, is entered "By W. M. Trust $1200." Goodell resigned as president of the company on June 13, 1884, and although there is no evidence that he had anything to do with the books of the company after that date, it appears that the land continued thereafter to be carried on the books of the company as an asset.

We are of opinion that the foregoing entries establish two facts: (1) that the money with which the property was paid for by Goodell's check was not money that originally belonged to him, and (2) that the money with which the property was in fact purchased was money of the Salem Street Railway Company, the predecessor in title of the Naumkeag Street Railway to whose rights and property this plaintiff is the successor in title. The entry on the ledger under date of March 8, 1875, shows that "Land Account No 41" was charged with the original surplus $1,200, and the only fair inference is that the land so bought was paid for out of a fund referred to as original surplus and which was the property of the Salem Street Railway Company. This entry establishes the fact that Goodell's check did not represent his money. The entry on the blotter, dated September 30, 1880, — more than five years after the land was acquired, — and which was transferred to the day book of the same date, charges the street railway company, "Wm. Mack, Tr. Dr. To A. C. Goodell, Jr. $1200." The explanation given on the blotter is that the charge was "For land in Topsfield and Hamilton (pasture) conveyed by A. C. G. Jr. to trustees to secure bonds N. S. R. Co. 1875 for a nominal consideration, he having been charged with the original purchase money in his account before the N. S. R. Co. was incorporated, $1200." This entry shows that Goodell had been charged with the original purchase money before February 26, 1875, — when the Naumkeag Street Railway was incorporated. This charge so made at about the time the land was purchased represented the $1,200 paid to Goodell from the original surplus of the Salem Street Railway Company to pay for the property. The entry and the explanation accompanying it show conclusively that the purchase price was not furnished by Goodell, but was money paid to him from the original surplus of the company. The master finds that this entry was made with Goodell's knowl-

edge and has a cross reference to ledger pages 198 and 207 where the accounts of the "Wm. Mack Trust" and "A. C. Goodell, Jr." respectively appear. In the former the charge is "A. C. G. Jr. $1200." and in the latter the credit is "By W. M. Trust $1200." These ledger entries, posted from the day book of the same day, charge the Wm. Mack Trust with the purchase price as the land had been conveyed by Goodell to the trustees to secure the bonds, and at the same time Goodell is credited with the amount with which he had been originally charged for the purchase money paid him, and this credit of $1,200 was in the end equivalent to a cash payment of that amount to him on that day. The apparent purpose of this credit of $1,200 in Goodell's account was to relieve him from the charge for that amount made about the time the land was bought and afterwards conveyed by him to the trustees.

The master states that there is no further entry in Goodell's account with the company relative to this land until 1884; that on June 1 of that year Goodell's account on the company's ledger showed a balance due the company of $2,083.89; that at a meeting of the directors held on June 9, 1884, at which all the directors, including Goodell, were present, it was voted that he be allowed for past and future use by the company of patent fare boxes (which were his own invention) the balance which he owed the company; that on June 13, 1884, he resigned as president, and on June 30, 1884, the company's ledger account with Goodell was balanced by an entry of $2,083.89.

It also appears that with the knowledge and consent of Goodell the property was assessed in both Hamilton and Topsfield for the years 1876 to 1884, both inclusive, to the Naumkeag Street Railway Company and that that company paid the taxes on the property during those years; that there were other entries on the books made with the knowledge and consent of Goodell showing that the land was included in and as part of the assets of the company.

During the years 1875 to 1884, both inclusive, returns were made annually by the company to the railroad commissioners of the Commonwealth, in each of which appears as a part of its assets the item "land owned by the company, needed in operating road." The amount opposite the item is $1,200 for the years 1875 to 1881, both inclusive; in the years 1882 and 1883 it was

increased to $2,390.07, and in 1884 to $3,590.07. These returns were made up from the trial balance under the direction of Goodell who signed and made oath to them during each of these years. St. 1876, c. 185, §§ 2, 3. St. 1874, c. 372, § 15. St. 1876, c. 173. The land referred to in these returns is found by the master to be the land in question.

Since the year 1884 the property has been assessed to the various street railway companies operating the road; and the master finds that these companies from 1884 down to the beginning of this suit have paid annually the taxes on the land, and that Goodell has paid no taxes upon the land at any time down to the time of the filing of the bill.

The statement of the master that there was no evidence that the company owned any real estate in Hamilton or in Topsfield other than the property in controversy, well warranted a finding that the land referred to upon the books of the corporation, and in the returns to the railroad commissioners as "owned by the company, needed in operating road" was the land described in the bill.

1. The contention of the defendants that the deed dated March 7, 1893, from the Naumkeag Street Railway Company to the Lynn and Boston Railroad Company does not include the land in question, cannot be sustained; while this deed describes the land as "conveyed to said grantor by deed of James P. Robinson and Abner C. Goodell, Jr., dated June 1, 1874 and recorded in said registry Book 898, Leaf 112," it is plain that the recital is an error and was intended to refer to the deed of January 1, 1874, from Robinson to Goodell, Jr.; this is apparent from an examination of the deed recorded in Book 898, Leaf 112, which describes the land from Robinson to Goodell, Jr., of that date.

2. As president of the Naumkeag Street Railway Company Goodell made under oath annually for ten years the returns to the railroad commissioners which included an item that is found to refer to the land in question as land owned by the company needed in operating the road; he either caused or knowingly permitted entries to be made upon the books representing that the land belonged to the company and not to him. So far as appears, with one exception, there was no evidence that he ever claimed any title to the land until the bringing of the bill. There was

testimony that some time previous to 1901 he had "explained to a member of his household that he so listed this land unwillingly and because assured by the clerk of the railroad commissioners that it would help other railroads and not injure his title." The master was not bound to believe this testimony. In any event, it cannot affect his finding that "this evidence did not seem to me to control or offset the findings herein made;" his conclusion is that "the evidence satisfied me that the books, deeds and votes had been sufficiently brought to Mr. Goodell's attention to bind him, that the land referred to in most of the documents and in the books was sufficiently identified as the land in question, and that all of the evidence was admissible as tending to establish either a resulting trust or a constructive trust."

We are of opinion that Goodell would not have been entitled in his lifetime, nor can his heirs at law since his decease be permitted, to hold the land which has greatly increased in value. His acts and conduct, the entries on the books, the returns to the railroad commissioners made and sworn to by him, the payment of taxes by the plaintiff and its predecessors in title with his knowledge and consent and the other evidence, warranted the finding that the land "was treated and regarded both by the street railway companies with whom Goodell dealt while an officer and director and by Goodell himself as their property and not his."

The evidence warranted the further finding that he recognized the rights of the equitable owner and never asserted nor claimed to hold adversely or attempted to repudiate the trust before the bringing of the bill. There is nothing to show that he was ever in the occupation or possession of the land. Under all the circumstances as disclosed by the evidence, most of which is documentary and not in dispute, although no actual fraud on the part of Goodell appears, still it would be contrary to equity and good conscience for him to have retained the land. It must be held that a resulting trust was established in favor of the plaintiff and that since Goodell's decease the land is charged with the same trust. *Amory* v. *Amherst College,* 229 Mass. 374. *H. C. Girard Co.* v. *Lamoureux,* 227 Mass. 277. *Howe* v. *Howe,* 199 Mass. 598. *Lufkin* v. *Jakeman,* 188 Mass. 528. *St. Paul's Church* v. *Attorney General,* 164 Mass. 188. *Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Railway,* 151 U. S. 1. *Soar* v. *Ashwell,*

[1893] 2 Q. B. 390. *Rochefoucauld* v. *Boustead,* [1897] 1 Ch. 196. Perry on Trusts, (6th ed.) § 865, and note. 1 Pom. Eq. Jur. § 155.

The failure of the master to find that the consideration for the original purchase was money of the Salem Street Railway Company does not prevent this court from drawing the inference which should be drawn by us from the facts as found. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 142, 143. *Old Corner Book Store* v. *Upham,* 194 Mass. 101. *Mansfield* v. *Wiles,* 221 Mass. 75, 84. The reason which actuated the parties in causing the title to the land, which had been purchased with funds of the Salem Street Railway, to be conveyed to Goodell does not appear, nor is it material in view of the entries on the books and the findings of the master and the reasonable inferences to be drawn therefrom.

3. There is no evidence to show that Goodell denied the plaintiff's title or repudiated its claim to the land before the bringing of the bill. Under such circumstances the statute of limitations would not run in his favor. *Jones* v. *McDermott,* 114 Mass. 400. *Potter* v. *Kimball,* 186 Mass. 120. *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 259. *Amory* v. *Amherst College, supra.*

4. We cannot adopt the defendants' contention that the right to maintain the bill is barred by laches. So far as laches is a question of fact, the master has found that the plaintiff's claim is not barred on that ground; we cannot say that this finding in the absence of a report of the evidence was wrong; nor could it be ruled as matter of law that the remedy which the plaintiff seeks to enforce is barred for that reason.

5. The evidence offered by the plaintiff of the entries upon the books and the returns made to the railroad commissioners was admissible upon the issues whether Goodell claimed to own any beneficial interest in the property and whether he admitted and recognized the plaintiff and its predecessors as the equitable owners. The evidence of the payment of taxes by the plaintiff and its predecessors was admissible upon the issues whether Goodell was or was not in possession of the land as owner and whether he ever claimed to hold adversely to the plaintiff or those under whom it claimed. *Enfield* v. *Woods,* 212 Mass. 547.

6. All the defendants' exceptions to the rulings and findings of the master have been examined and considered. It is unnecessary to refer to them in detail, but is sufficient to say that we discover no harmful error; therefore they must be overruled.

7. The contention of the defendants that neither the plaintiff nor its predecessors had any authority to acquire, hold or convey the land, and that any attempt to do so was *ultra vires,* cannot prevail. The recital in the returns filed by Goodell with the railroad commissioners that the land was "owned by the company, needed in operating road" is evidence as against the defendants that it was land lawfully owned by the company, which it could convey to the plaintiff. The master's inability to find on what the statement in the returns that the land was needed in operating the road was based, does not affect his finding that there was evidence (which is not reported) that the Naumkeag Street Railway had authority to hold and convey the land, and which undoubtedly convinced him that the street railway companies did not act in this connection beyond the scope of their respective charters.

As the evidence warranted a finding that there was a resulting trust, we need not consider whether the returns made to the railroad commissioners would warrant a finding that there was an express trust. R. L. c. 147, § 1. A majority of the court are of opinion that the decree must be affirmed with costs.

*So ordered.*