MARY E. T. QUINN & another *vs.* ROSE M. QUINN, administratrix, & another.

Suffolk.    March 17, 1927. — July 1, 1927.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Trust*, Resulting.    *Equity Pleading and Practice*, Bill.    *Frauds, Statute of.*
*Equity Jurisdiction*, Laches.

The allegations of a bill in equity, brought in October, 1922, by a sister and a brother against the widow and administratrix of the estate of their brother, were in substance that certain real estate was purchased with money furnished equally by the plaintiffs and their brother and by agreement the title was taken in the name of their mother as trustee; that later the mother, who could neither read nor write, intending and believing that she was making such a disposition of the property that the plaintiffs and the brother would have equal rights therein, made a deed declaring that she held it as trustee for the brother; that the brother died in April, 1922, and that the defendant refused to recognize the plaintiffs' claim in the land except as heirs of their brother. A demurrer by the defendants was overruled. *Held*, that

(1) The bill set forth a resulting trust for the benefit of the two plaintiffs and the heirs of their brother;

(2) No laches were disclosed;

(3) The statute of frauds was not a bar to the trust alleged in the bill even if it had been alleged that the agreements between the plaintiffs and the brother were oral;

(4) The demurrer properly was overruled.

Upon the suit above described being heard on its merits, it appeared that the plaintiffs, their brother, and their mother orally agreed to buy land and build a house thereon for the use of the mother during her life, it at her decease to pass in equal shares to the three children; that the land was bought and the house was built, the deed running to the mother, simply designating her as "trustee"; that the mother's intention in thus taking title to the property was to hold it in trust for her own life and upon her death for her three children, each child to have a one third undivided interest; that the cost of the land and building was $8,600, of which $5,000 was raised by a note secured by a mortgage upon the land, $1,600 was contributed by the brother, the defendant's intestate, and $2,000 was contributed by the plaintiffs and their mother, the contribution of each of the plaintiffs and of the mother not appearing; that in order to perfect the title to satisfy the mortgagee, by agreement of the four, the mother made the declaration of trust for herself during her life and after her death for the brother; that the mother, who was advanced in years and without knowledge or experience in matters pertaining to real estate, did not intend to give the brother the entire

beneficial interest in the property, but to leave it so that each child should have a one-third undivided interest; that later one of the plaintiffs paid $1,000 toward discharging the mortgage; that although the brother after his marriage occupied one part of the house for less than an entire year that he lived after his marriage and rent formerly received was used to defray expenses of the house, no question as to rent ever was raised among the parties until his death, when the defendant asserted her ownership. *Held*, that

(1) The amounts contributed by the plaintiffs and by their brother not being equal, the suit must fail as one to establish a resulting trust for the benefit of the plaintiffs and their brother's heirs in equal one-third interests;

(2) A presumption of payments equal among joint contributors could not arise in the circumstances disclosed on the record;

(3) No specific payments of definite shares in the land appeared to support a resulting trust in their favor;

(4) No contention based on the contribution made by the mother toward the purchase price or the amount raised by the mortgage could arise in the suit where the representative of the mother's estate was not a party;

(5) The payment made by one of the plaintiffs in reduction of the mortgage indebtedness long after the land was purchased, whatever other consequence it might have, could not establish a resulting trust;

(6) No resulting trust was established on the facts found;

(7) The bill not being designed, either as to its parties or its substantive allegations, to reform the declaration of trust by the mother, it was not necessary to determine what might be the effect of the mere description of the grantee as trustee standing alone;

(8) By reason of G. L. c. 203, § 1; c. 259, § 1, the oral agreement among the plaintiffs, their brother and their mother could not be enforced.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 6, 1922, by Mary E. T. Quinn and Francis V. Quinn against Rose M. Quinn, individually and as administratrix of the estate of Daniel J. Quinn, the plaintiffs' brother.

The defendants demurred. The demurrer was heard by *Pierce*, J., by whose order an interlocutory decree was entered overruling it, from which the defendants appealed.

The suit then was referred to a master. Material facts found by the master are stated in the opinion. The suit was heard upon the master's report by *Wait*, J., by whose order there were entered an interlocutory decree confirming the report and a final decree, adjudging that the real estate

in question was held by Daniel J. Quinn as trustee for the benefit of the plaintiffs and himself, each of the beneficiaries holding an equal equitable interest, and ordering the trust terminated and that the defendant convey to each of the plaintiffs one undivided one-third interest in the real estate free from all trusts. The defendants appealed.

*J. J. Cummings*, for the defendants.

*J. F. Bassity*, for the plaintiffs.

RUGG, C.J. The plaintiffs seek by this suit in equity to have a resulting trust declared in their favor in certain real estate. It is alleged in the bill that the plaintiffs are children of Margaret Quinn, now for many years deceased, and that the defendant is the widow and administratrix of Daniel J. Quinn, who was a brother of the plaintiffs and who died without issue on April 30, 1922, having been married less than a year; that the respondent asserts that the real estate in question is the property of the estate of said Daniel and that the plaintiffs have no right or interest therein save as heirs of said Daniel; that the money used for the purchase of said land was furnished equally by the plaintiffs and said Daniel, the title being taken in the name of their mother as trustee, and that it was agreed by the four that the mother should hold the land in trust for the plaintiffs and said Daniel, each *cestui que trust* to be entitled to an undivided one third equitable interest therein; that shortly after the conveyance to the mother she made a declaration of trust wherein she declared that she held the land in trust for Daniel in fee after her death; that the mother, who was unable to read or write, intended to make, believed and stated on subsequent occasions that she had made, such a declaration of trust as would leave to the plaintiffs and said Daniel an equal interest in the land; that she stated that each of her said children had contributed to the purchase price of said land; that it was understood, believed and agreed by the plaintiffs and said Daniel that each had one undivided third interest in the ownership of the land, and that the plaintiffs always have so understood and believed until the assertion by the defendant after the death of Daniel that the latter was the sole owner

thereof. The defendant demurred to the bill on the grounds of want of equity, the statute of limitations, laches, and the statute of frauds.

The allegations in the bill of equal contributions by each of the three children toward the purchase of the property sufficiently state a resulting trust founded on the established principle of equitable jurisprudence that, where one buys and pays for the whole or any definite fractional part of real estate and the title is taken in the name of another, a trust results in favor of the one who pays the consideration, which may be enforced in equity against the grantee named in the deed. *Howe* v. *Howe*, 199 Mass. 598, 600. *Davis* v. *Downer*, 210 Mass. 573, 575.

The deed to the mother discloses on its face that she held title as trustee, although the trusts are not there declared.

It is alleged in substance in the bill that there was no repudiation of the trust until after the death of Daniel on April 30, 1922. The bill was filed in October, 1922. Hence neither the statute of limitations nor laches appears as a bar on the face of the bill. *Lufkin* v. *Jakeman*, 188 Mass. 528, 530, 531. *Allen* v. *Stewart*, 214 Mass. 109, 113. *Stewart* v. *Finkelstone*, 206 Mass. 28, 35, 36.

If it appears on the face of a bill in equity that an agreement is oral when by the statute of frauds it must be in writing, advantage may be taken of this by demurrer. *Ahrend* v. *Odiorne*, 118 Mass. 261, 268. If that fact does not appear on the face of the pleadings, demurrer does not lie for mere omission to allege that the agreement was in writing. *Price* v. *Weaver*, 13 Gray, 272. *Southwick* v. *Spevak*, 252 Mass. 354. As matter of pleading, the bill in the case at bar sets up such a trust as does not come within inhibitions of the statute of frauds, and as may be proved by parol. *Peabody* v. *Tarbell*, 2 Cush. 226, 232.

The reference in the bill to the declaration of trust executed by the mother does not bind the plaintiffs to its terms because they were not parties to it, see *Blodgett* v. *Hildreth*, 103 Mass. 484, 487 and *Johnson* v. *Von Scholley*, 218 Mass. 454, 457, and hence does not neutralize and is not fatal to

the previous sufficient allegations setting forth a resulting trust. The demurrer was overruled rightly.

The case then was sent to a master. Since the evidence is not reported, his findings of fact must be accepted as true. It appears that the plaintiffs, their widowed mother and their brother Daniel in 1899 orally agreed to buy land and build a house thereon, for the use of the mother during her life and at her decease to pass in equal shares to the three children. Pursuant to this understanding the land was bought and the house built. The deed was made in the name of the mother as trustee with habendum to "the said Margaret Quinn, Trustee and her heirs successors and assigns." Her purpose in thus taking title to the property was to hold it in trust for her own life and upon her death for her three children, the plaintiffs and Daniel, each child to have one third undivided interest. Daniel had full knowledge and understanding of this purpose and intention, as did also the plaintiffs, and they all acquiesced and approved. The cost of the land and building was at least $8,600. The proceeds of a mortgage for $5,000 were used to defray a part of the cost. Of the remaining $3,600 Daniel contributed $1,600 and the plaintiffs and their mother $2,000, the contribution of each not being found. When the time came to put the mortgage upon the property, the prospective mortgagee was dissatisfied with the condition of the record title in the name of the mother as trustee. The four then interested in the property conferred and some of them in behalf of the four consulted an attorney. It was agreed by the four that one of the three children should appear on the record to hold the property upon and after the death of the mother for the three children; the others first suggested the plaintiff Mary as the one so to hold it, but she declined and suggested Daniel and he with the knowledge and approval of the others consented so to serve. In the effort of the four to put the record title in a condition satisfactory to the prospective mortgagee, the same attorney drafted an instrument termed a declaration of trust and dated December 16, 1899, which was signed by the mother by her mark. This instrument, after referring to the deed to the mother

as trustee, stated in substance that the mother held the title in trust for herself during her life with remainder after her death to Daniel in fee discharged of all trusts, the trustee also having the right to sell, convey, mortgage and lease the property during the trust "as freely as if the same were held by her individually." The mother then was advanced in years and without knowledge or experience in matters pertaining to real estate. In signing and executing this instrument she "did not intend, in any contingency, to provide that her son Daniel upon her death should have the entire beneficial interest in the property." On the contrary, she "intended to provide and understood and believed she was providing, that if the property were undisposed of to third parties during her life, that upon her death Daniel would hold the property in trust for himself" and the plaintiffs, "each to have one third undivided interest." Upon the completion of the house and at the time of the execution of the declaration of trust, these four Quinns lived together as a family, all being then unmarried, in one of the two tenements of the house built on the land thus bought, and they continued to do so until the death of the mother in 1905; and thereafter until 1921 the three children already named lived in the same tenement as one family. In the latter year Daniel was married and he then moved into the other tenement in the house. The plaintiffs, after the marriage and removal of Daniel, continued to be unmarried and to occupy the same tenement. No question of rent ever was raised among the plaintiffs and their mother and Daniel. After the death of the latter, the defendant demanded rent of the plaintiffs. Rent of the one tenement rented was collected by the mother as long as she lived, and thereafter by the plaintiff Mary until the marriage of Daniel, who then began to occupy the remaining tenement and there was no rent. The rent thus collected was exhausted in paying interest, taxes and repairs on the property. The plaintiff Francis, who had a substantial income from a hack business, from 1891 to 1899, without retaining any fixed sum for himself, turned over the net income to his mother, neither as a gift to her nor as money belonging to her, but as his earnings

and as his money, with the understanding that she might use it for the family needs. Daniel from 1893 to 1899 paid his mother substantially $10 per week for his board. The plaintiff Mary saved considerable money, which was subject to the same uses by her mother as was the income of the plaintiff Francis. In 1907 the plaintiff Mary, after conference with the plaintiff Francis and with Daniel, advanced $1,000 for the reduction of the mortgage on the property. No part of this advancement belonged to Daniel and it was not in any sense a gift to him and he never repaid any of it. She simply advanced "the $1,000 to reduce the mortgage indebtedness on property in the beneficial ownership of which she believed, — and to the knowledge of Daniel believed — she had one third undivided interest, together with Daniel and Francis who also had — each — one third undivided interest. · Mary and Francis did not have knowledge of the wording pertaining to Daniel in the instrument dated December 16, 1899, until after the death of Daniel in 1922, and learned the wording shortly after the widow of Daniel, the respondent, demanded rent from Mary and Francis, in 1922. During the lifetime of Daniel, neither Mary nor Francis ever had any notice that Daniel claimed to have or pretended to have, the entire beneficial ownership in the remainder of the property."

The frame of the present bill is unmistakable in the ground on which relief is sought. That ground is a resulting trust arising from payment of the purchase price in equal shares by the plaintiffs and their brother Daniel and the taking of the title by the mother as trustee for them. The facts found by the master do not support the allegations of the bill in this particular. The amount paid by Daniel toward the purchase is found specifically to have been a definite sum slightly in excess of one third of the entire amount paid in cash. The remaining part of the purchase price was contributed by the two plaintiffs and their mother but the amounts contributed by each are not shown. The only definite sum found to have been paid by any of the three was the $1,000 paid by the plaintiff Mary several years after the purchase in reduction of the mortgage on the real estate.

These facts are not sufficient to establish a resulting trust in favor of the plaintiffs.   This doctrine of resulting trusts rests upon payment of a specified sum of money for a definite share of the estate.   It is a doctrine which was established before the statute of frauds came into existence and which is not designed to wear away by attrition the effect of the statute.  That legislative enactment is as binding in equity as in law.  The equitable doctrine of resulting trusts rests upon the natural presumption that, in the absence of anything to show the contrary, he who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason. Perry on Trusts, (6th ed.) § 126.   *Smithsonian Institution* v. *Meech*, 169 U. S. 398, 407.   The rule was stated with fullness and care by Chief Justice Morton in *Bailey* v. *Hemenway*, 147 Mass. 326, 328, in these words: "When the money for the purchase of land is paid or furnished by one person, and the deed is taken in the name of another, there is a resulting trust created by implication of law in favor of the former.   It is also true, that when one person pays the money for a specific share, an aliquot part of the land, such as one half or one quarter, or other fixed fraction of the whole, and the title to the whole is taken in the name of another, a trust results in favor of the former for such aliquot part.   But a general contribution of a sum of money towards the entire purchase is not sufficient to produce this result. When, therefore, one makes an oral contract with another that the latter shall buy land, on joint account, and he in violation of the contract takes the deed to himself, no trust results in favor of the former as to one half of the land, unless it is shown that he furnished the money for the one half, — in other words, that it was bought with his money."   This means that the trust rests upon a contribution of a definite part of the purchase price whereby the contributor becomes the beneficial owner as *cestui que trust* of a corresponding proportionate undivided fractional part of the real estate. It means that a contribution, for example, of one fifth part of the purchase price can result in a trust for only one

undivided fifth part and cannot by oral agreement of the contributing party or parties and of the one who takes the title result in a trust for the particular contributor of any larger undivided fractional part. To admit the validity of any such oral agreement would be outside the limits of the doctrine of resulting trusts and would be in the teeth of the statute of frauds. (Whether an oral agreement for a smaller share than the proportion which the amount contributed bears to the purchase price would be valid or enforceable for any reason need not be considered because it does not arise on this record. Compare *Jones* v. *Jones*, 281 Ill. 595, 598, 599; *Robertson* v. *Woods*, 263 S. W. Rep. (Mo.) 135; *Collins* v. *Corson*, 30 Atl. Rep. (N. J.) 862.) As was said in *White* v. *Carpenter*, 2 Paige, 217, at page 241, "The principle is, that the whole consideration for the whole estate, or for the moiety or third or some other definite part of the whole, must be paid to be the foundation of a resulting trust; and that the contribution or payment of a sum of money generally for the estate, when such payment does not constitute the whole consideration, does not raise a trust by operation of law for him who pays it." *McGowan* v. *McGowan*, 14 Gray, 119, 121. *Fickett* v. *Durham*, 109 Mass. 419, 421. *McDonough* v. *O'Niel*, 113 Mass. 92. *Bourke* v. *Callanan*, 160 Mass. 195. *Dudley* v. *Dudley*, 176 Mass. 34. *Skehill* v. *Abbott*, 184 Mass. 145. *Tourtillotte* v. *Tourtillotte*, 205 Mass. 547. *Pollock* v. *Pollock*, 223 Mass. 382. *Keown* v. *Keown*, 230 Mass. 313, 315. *Daniels* v. *Daniels*, 240 Mass. 380. *Ciarlo* v. *Ciarlo*, 244 Mass. 453. *Browdy* v. *Browdy*, 250 Mass. 515. *Moynihan* v. *Murphy*, 253 Mass. 110. *O'Brien* v. *O'Brien*, 256 Mass. 308. *Olcott* v. *Bynum*, 17 Wall. 44, 59, 60. *The Venture*, 1908 P. 218, 229, 230. *Reynolds* v. *Morris*, 17 Ohio St. 510, 514. *Perry* v. *McHenry*, 13 Ill. 227, 232, 233. *Baker* v. *Vining*, 30 Maine, 121, 128, 129. *O'Donnell* v. *White*, 18 R. I. 659. The limits of these settled principles were not intended to be extended by *Lynch* v. *Lynch*, 249 Mass. 543, or by *Boston & Northern Street Railway* v. *Goodell*, 233 Mass. 428. A presumption of payments equal among joint contributors cannot arise in the circumstances disclosed on this record. *Pollock* v. *Pollock*, 223 Mass. 382.

*Browdy* v. *Browdy,* 250 Mass. 515. *Moynihan* v. *Murphy,* 253
Mass. 110. Compare *Shoemaker* v. *Smith,* 11 Humph. 81, 83.

It may be contended that the contribution of the mother,
whatever it may have been, having been paid for an estate
for her benefit during her life only, and that life estate having
come to an end by her death, the plaintiffs as contributors
in unknown shares of an unknown part of the $2,000, are
entitled to the two thirds interest because the two thousand
dollars was contributed by the plaintiffs and their mother
as a common fund for the life estate and the remainder in two
thirds of the fee. That contention may also be urged to
support a claim for twenty thirty-eighths of the estate. We
do not need to consider the merits of this contention because,
however put, it cannot be supported on the present record.
That is not the frame of the present bill. The substance
of such a contention cannot be decided in a proceeding to
which the representative of the estate of the mother, who
contributed to the purchase price and who took the title
to the real estate, is not a party.

It is to be observed also that a substantial part of the
money paid for the completed property, including the house,
came from the mortgage on the real estate executed by the
mother alone at some time later than the purchase of the
land. What effect, if any, this circumstance may have upon
the rights of the parties has not been argued and need not be
considered. See *Kennerson* v. *Nash,* 208 Mass. 393.

The subsequent payment by the plaintiff Mary in reduc-
tion of the mortgage indebtedness long after the land was
purchased, whatever other consequence it may have, cannot
establish a resulting trust. "The resulting trust must arise
at the time of the purchase, and cannot be created after-
wards." *Davis* v. *Wetherell,* 11 Allen, 19 n., 20 n. *Barnard*
v. *Jewett,* 97 Mass. 87. *Gould* v. *Lynde,* 114 Mass. 366, 368.

The plaintiffs are not shown by the master's report to have
contributed at the time of the purchase any definite sums of
money. Together with their mother, they paid $2,000.
If it be assumed that the plaintiffs and their mother might
join to enforce a resulting trust in their joint favor, the
plaintiffs cannot prevail because, among other reasons,

neither their mother nor her estate is a party to the case at bar. No resulting trust is established on the facts found by the master.

The deed to "Margaret Quinn, Trustee" bears some indication in a court of equity that she was not to hold the estate in her own personal right but for the benefit of some one else upon a trust of some sort not there defined. *Kendrick* v. *Ray*, 173 Mass. 305, 308. *Farrington* v. *Stucky*, 91 C. C. A. 311, 314; *S. C.* 165 Fed. Rep. 325. *Kuether* v. *State*, 174 Wis. 538, 452. *Hume* v. *Indiana National Life Ins. Co.* 155 Ark. 466, 476. It is not necessary to determine what might be the effect of the mere description of the grantee as trustee standing alone. Margaret Quinn recognized her duty and obligation as holder of the title in part for the benefit of others and executed a declaration purporting to state with exactness the terms of the trusts on which she held the title. The real complaint of the plaintiffs is that this declaration was not a true statement of the provisions of the trust agreed upon by all the parties in interest. This bill is not designed either as to its parties or its substantive allegations to reform that instrument.

The oral agreement between the parties cannot be enforced by reason of the statutes which require declarations of trust concerning land, G. L. c. 203, §1, and agreements touching the sale of land or any interest therein, G. L. c. 259, § 1, to be in writing. The case at bar reveals some apparent hardship. But whatever hardship there may be results from the failure by all the parties in interest to conform to the provisions of statutes as to trusts and titles to land, statutes enacted for the beneficent purpose of removing the temptation to commit frauds and perjuries by oral testimony and in general having that effect. See the words of Holmes, J., in *Bourke* v. *Callanan*, 160 Mass. 195, 197.

The case at bar is distinguishable from *Powell* v. *Powell*, *post*, 505, this day decided, because that case rests upon the doctrine of constructive trusts founded on fraudulent conduct.

The result is that the interlocutory decree overruling the demurrer is affirmed and the final decree establishing a resulting trust is reversed.

*Ordered accordingly.*