EDITH DRUKER *vs.* SAMUEL DRUKER & another.

Suffolk.    May 20, 1929. — September 9, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Trust,* What constitutes, Resulting. *Husband and Wife. Equity Pleading and Practice,* Master: exceptions to report; Decree.

In a suit in equity by a woman against her husband and a bank, a master found that, previous to her marriage, the plaintiff had worked as a dressmaker and had saved some money; that after her marriage she turned savings, the amount of which the master was "unable to state," over to her husband, who deposited them with his savings in a savings account in his name; that later most of such account was used for the purchase of a delicatessen business and fixtures, and a lease was taken in the husband's name; that profits from the business later were put in a savings account in the defendant bank in the husband's name; that the plaintiff "gave considerable of her time and labor" towards the operation of the business; that the "proceeds of the store and lunch room were obtained from the result of her labors in conjunction with her husband's," but "No account . . . of her labor, or any books of account were kept"; that the expenditures made to start the business of a delicatessen store and lunch room were made "in furtherance of the object contemplated and in accordance with the understanding between the parties," namely, "going into business for their mutual benefit," but that "no special agreement with regard to the ownership of the store was made by the parties at the time the store was hired and the equipment was purchased." The plaintiff averred in her bill that she owned a one-half interest in the store and one half of the moneys on deposit and sought a decree to that effect. A final decree was entered dismissing the bill. *Held,* that

(1) No express trust of any undivided part of the property for the individual benefit of the plaintiff was shown;

(2) The master having found in substance that he was unable to state what part of the savings were the plaintiff's, no resulting trust for the plaintiff's benefit was shown;

(3) The bill properly was ordered dismissed.

Upon the hearing of exceptions by the plaintiff to the report by the master in a suit in equity, the judge, without the entry of any interlocutory decree, ordered the exceptions overruled and, by his order, a final decree dismissing the bill was entered. *Held,* that, while the usual and better practice is to enter an interlocutory decree over-

ruling the exceptions and confirming the report, this court in the circumstances treated the final decree as a practical confirmation of the report.

BILL IN EQUITY, filed in the Superior Court on November 9, 1928, and described in the opinion.

The suit was referred to a master. Material findings by the master are stated in the opinion. Exceptions by the plaintiff to the master's report were heard by *Williams*, J., who entered an order, but not a formal interlocutory decree, overruling them, and by whose order a final decree was entered dismissing the bill without an interlocutory decree having been entered confirming the master's report.

The plaintiff appealed only from the final decree.

The case was submitted on briefs.

*H. Kahn & R. Robinson*, for the plaintiff.

*S. Bamber & S. J. Witkin*, for the defendants.

FIELD, J. This is a bill in equity brought in the Superior Court by Edith Druker against her husband, Samuel Druker, herein referred to as the defendant, and The Atlantic National Bank of Boston, wherein the plaintiff alleges, with respect to a certain delicatessen store and lunch room, money on deposit in said bank in the name of the defendant and his "safe deposit vault" in said bank and its contents, that "the plaintiff owns one half interest in said delicatessen store and lunch room at No. 95 Leverett Street, Boston, and one half of the moneys on deposit in The Atlantic National Bank of Boston, and one half of whatever property is in the safe deposit vault," and prays that "it be decreed that the plaintiff is entitled to one half interest in the delicatessen store and lunch room at No. 95 Leverett Street, Boston, and to one half of all moneys on deposit in The Atlantic National Bank of Boston belonging to the defendant Samuel Druker, and to one half of the contents of the safe deposit box" in said bank. The case was referred to a master who filed a report. The evidence was not reported. The plaintiff, only, filed exceptions to the report. The judge made an order overruling them. A final decree was entered dismissing the bill, and the plaintiff appealed therefrom.

The question for determination here is whether the plaintiff has a right, enforceable in equity, to an undivided part of the property referred to in the bill of complaint which is held by the defendant. She contends that by reason of her contributions of money and labor to the acquisition of this property, and the understanding and agreement of the parties, she is entitled to one half of it.

The property referred to in the bill of complaint, as found by the master, "consists of the stock and fixtures in said store and lunch room at 95 Leverett Street, the good will of the business, the amount of $3,647.28 with interest from October 20, 1928, and the balance in the checking account amounting to $89.01. The said store is still a going business." Said amount of $3,647.28 was in a savings account in The Atlantic National Bank of Boston on October 20, 1928. The checking account was in the same bank. The master made no finding as to any safe deposit box or contents thereof.

The facts found by the master as to the manner in which the property in question came into the hands of the defendant may be summarized as follows:

The plaintiff and the defendant in Russia were engaged to be married. They came to this country in 1921 at about the same time. The defendant worked in a delicatessen store. The plaintiff "took up dressmaking as a trade" shortly after her arrival. "It was then contemplated and understood" by the plaintiff and the defendant "that both of them would work hard and save money with the object of getting married and eventually going into business for their mutual benefit," and that "to achieve this object" the plaintiff "would have to continue working as a dressmaker after the marriage." The plaintiff saved some money before her marriage, but the master does not find "that any part of the money so saved by her was given to the defendant for their joint benefit." They were married October 23, 1922. The plaintiff continued to work as a dressmaker until November 12, 1925, and turned over to her husband money which she saved, which, with his savings, were deposited in his name in the Postal Savings Department of the Post Office.

The master is "unable to state what these amounts were." Later a part of the money on deposit in this savings department was transferred to the savings department of The Atlantic National Bank of Boston to an account in the defendant's name.

In the fall of 1925, the premises at No. 95 Leverett Street, Boston, were hired in the name of the defendant as lessee for the purpose of running a delicatessen store and lunch room. Fixtures were bought from the owner of the premises and a bill of sale thereof taken in the name of the defendant. Three months' rent was paid in advance. Stock in trade and furnishings were purchased. Payments were made from the savings deposits above referred to, $1,450 being withdrawn for the purpose, and from the sum of $250 borrowed from the plaintiff's mother, which was later repaid to her. After these payments and the withdrawal of $167.66 for a purpose which does not appear, a balance of $1 was left in the savings account in The Atlantic National Bank of Boston. The master finds that the expenditures made to start the business of a delicatessen store and lunch room were made "in furtherance of the object contemplated and in accordance with the understanding between the parties," namely, "going into business for their mutual benefit," but that "no special agreement with regard to the ownership of the store was made by the parties at the time the store was hired and the equipment was purchased."

The plaintiff "gave considerable of her time and labor" towards the operation of the business. The "proceeds of the store and lunch room were obtained from the result of her labors in conjunction with her husband's. No account . . . of her labor, or any books of account were kept. The money received was put in a cash register" to which both plaintiff and defendant had access. These proceeds were used for the support of themselves and their child. "No salary as such was paid either of them and no definite amount of money was drawn by either as representing his or her share of the profits of the business." From time to time money was deposited in the savings account in The Atlantic National Bank of Boston and in a separate checking account in the

same bank, both in the name of the defendant. All checks drawn on this checking account were signed by the defendant.

The plaintiff and defendant have not lived together since October 19, 1928. The savings deposit in The Atlantic National Bank of Boston on October 20, 1928, amounted to $3,647.28, of which all but $1 was obtained from the business. This deposit was withdrawn on that date by the defendant and placed in a new account at the same bank in his name as trustee for a fictitious person. On October 24, 1928, the defendant notified the plaintiff to leave the store and lunch room.

Before November 9, 1928, when this suit was brought, the plaintiff "did not object to the money being deposited as aforesaid or the business being run" in the name of the defendant. The master found that "although each contributed to the success of the undertaking . . . such contributions were made with the understanding that they should work together as husband and wife for the mutual benefit of themselves and their child and to make provision for their joint welfare," and that, except for this, "neither of them at any time before suit was brought treated the transaction as a business deal or one calling for an accounting as between partners in business." From time to time both plaintiff and defendant "spoke of the store and business as 'our' store and 'our' business." The master concluded, "Subject to the ruling of the court on matters of law, . . . that the above facts do not disclose an intention that the . . . [plaintiff] should receive a definite fraction or share of the property referred to in consideration of specific or definite services or money contributed by her." To this conclusion the plaintiff excepted.

There is jurisdiction in equity of suits between husband and wife "to secure her separate property, to prevent fraud, to relieve from coercion, to enforce trusts and establish other conflicting rights concerning property." *Gahm* v. *Gahm,* 243 Mass. 374, 376, and cases cited. See *Moreau* v. *Moreau,* 250 Mass. 110, 113; *Young* v. *Young,* 251 Mass. 218; *O'Brien* v. *O'Brien,* 256 Mass. 308; *Cram* v. *Cram,* 262 Mass. 509, 513.

The property stands in the name of the defendant. In its present form it was never the separate property of the plaintiff. Nor has the master found that there was fraud or coercion on the part of the defendant. In this respect the case differs from such cases as *Frankel* v. *Frankel*, 173 Mass. 214, and *Powell* v. *Powell*, 260 Mass. 505. See also *Ciarlo* v. *Ciarlo*, 244 Mass. 453; *Cram* v. *Cram, supra.* Because of the fact that the plaintiff and defendant are wife and husband it is obvious that the plaintiff can establish no right as a partner of the defendant (*Voss* v. *Sylvester*, 203 Mass. 233, 237), or as his employee (*Humphrey's Case*, 227 Mass. 166), or by reason of any contract with him. G. L. c. 209, § 2. She seeks therefore, in substance, to impress upon the property a trust for her individual benefit to the extent of one undivided half of it. Since the property is personalty, the lack of a "written instrument . . . creating or declaring" a trust, which the statute of frauds makes essential in the case of a "trust concerning land," does not preclude the plaintiff from proving an express trust and thus limit her to proof of a trust which "may arise or result by implication of law." See G. L. c. 203, § 1. See also G. L. c. 259, § 1; *Chace* v. *Gardner*, 228 Mass. 533.

The facts found by the master do not establish an express trust of any undivided part of the property for the individual benefit of the plaintiff. The purpose of the plaintiff's work as a dressmaker, followed by the deposit of her savings to an unascertained amount with those of her husband in the savings department of the Post Office, and of the expenditure from the combined savings to start the business of a store and lunch room, was found to have been "going into business for their mutual benefit," and her labor and that of her husband in the business conducted in his name were found to have been performed "with the understanding that they should work together as husband and wife for the mutual benefit of themselves and their child and to make provision for their joint welfare." The conclusion of the master from other facts found, to which the plaintiff objected, that the facts found "do not disclose an intention that the . . . [plaintiff] should receive a definite fraction or share of the property

referred to in consideration of specific or definite services or money contributed by her," was warranted. The findings with respect to the "mutual benefit" and "joint welfare" of the plaintiff and defendant are much less specific than those in *O'Brien* v. *O'Brien*, 256 Mass. 308, 310, where the master found that the money with which the property in question was bought was "taken out of common funds belonging equally to plaintiff and defendant," and that title to the property was taken by the wife in trust for herself and her husband "in equal shares." The findings do not warrant the conclusion that the plaintiff and defendant or either of them intended to create an express trust of the property in question for the benefit of the plaintiff to the extent of any definite part thereof. The intention shown is more like that in *Pollock* v. *Pollock*, 223 Mass. 382, 384. If any express trust was created it was a trust similar to that in *Moore* v. *Mansfield*, 248 Mass. 210, 215, for the joint benefit of the plaintiff and defendant, or of them and their child, (see also *Cram* v. *Cram*, 262 Mass. 509, 511), and not, at least until severance or the survival by the plaintiff of her joint beneficiary, or beneficiaries, for the individual benefit of the plaintiff. As this bill of complaint is framed, it does not require a decision as to whether such a joint trust was created or, if so, whether there has been such repudiation of it by the defendant as trustee as to entitle the plaintiff to relief. See *Cram* v. *Cram, supra*, at pages 511, 512.

The facts found by the master do not establish a resulting trust of any undivided part of the property for the individual benefit of the plaintiff. As between husband and wife at the suit of either, or as between other persons, the person seeking to enforce such a resulting trust "must prove that he furnished himself the entire consideration or a specific and definite part thereof, for which it was intended he should receive a determinate and fixed fraction of the whole estate conveyed." *Pollock* v. *Pollock, supra*, at page 384, and cases cited. See *Daniels* v. *Daniels*, 240 Mass. 380, 385; *Browdy* v. *Browdy*, 250 Mass. 515, 516, 517. See also *Moynihan* v. *Murphy*, 253 Mass. 110; *O'Brien* v. *O'Brien, supra; Quinn* v. *Quinn*, 260 Mass. 494, 501, 502. A "general con-

tribution of a sum of money towards the . . . purchase" is not enough. *Bailey* v. *Hemenway*, 147 Mass. 326, 328. *Browdy* v. *Browdy, supra,* at page 516. *Quinn* v. *Quinn, supra.* Though the cases in which this principle is stated or applied usually involve real estate, it is applicable also to personal property. See *O'Brien* v. *O'Brien, supra.* See also *Briggs* v. *Sanford,* 219 Mass. 572, 576. The plaintiff does not bring herself within this principle. She has not proved that she was the owner of any part of the savings deposits before the purchase of the store and lunch room. While the master found that she deposited her savings with those of her husband, he is "unable to state what these amounts were." There is no presumption that she and her husband deposited equal amounts. *Browdy* v. *Browdy, supra. Quinn* v. *Quinn, supra.* Nor can any inference be drawn from the fact that she carried on her occupation as a dressmaker after her marriage for the purpose of "eventually going into business for their mutual benefit," as found by the master, and deposited her savings with those of her husband for that purpose, that they deposited equal amounts or that in any way she acquired an interest in the aggregate amounts deposited equal to his interest therein. The findings on this point do not go as far as those in the case of *O'Brien* v. *O'Brien, supra.* Consequently the plaintiff has not proved that she furnished either "the entire consideration or a specific and definite part thereof" for the purchase of the store and lunch room. *Pollock* v. *Pollock, supra.* Nor does the fact that she and her husband started the business with the understanding that they were "going into business for their mutual benefit" meet the requirement that it must be intended that she "should receive a determinate and fixed fraction" of the property acquired. The case cannot be distinguished in principle from *Pollock* v. *Pollock, supra.* The plaintiff has no greater right in any increase in the property in the form of good will or otherwise, or in the proceeds of the business which were withdrawn and deposited in the bank. The ownership of these follows as an incident the ownership of the store and lunch room. See *Powell* v. *Powell,* 260 Mass. 505, 509.

It follows .that the bill was dismissed rightly.

After the order of the judge overruling the plaintiff's exceptions to the master's report the case was ripe for the entry of a decree to that effect and confirming the report. The usual and better practice is to enter an interlocutory decree overruling the exceptions and confirming the report, but this matter may be included in the final decree. See *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 36; *W. T. Tilden Co.* v. *Densten Hair Co.* 216 Mass. 323, 329. We treat the final decree dismissing the bill, following as it does an order overruling the plaintiff's exceptions, as "a practical confirmation of the report." See *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 200.

*Decree affirmed.*