Russo *v.* Russo.

---

MARION P. RUSSO *vs.* RICHARD A. RUSSO & another.

Plymouth.    April 15, 1975. — June 26, 1975.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Trust,* Resulting trust.    *Tenants in Common.    Joint Tenants.    Equity Pleading and Practice,* Parties.

In a purchase of real estate wherein two persons made the down payment and monthly mortgage payments and title was taken in the name of another for convenience, a resulting trust arose in favor of the two; in the absence of evidence of the relative contributions of each of the two purchasers and the form of tenancy they intended, it would be presumed that they took as tenants in common and in equal shares. [366-368]

In a bill in equity to establish and enforce a resulting trust in certain property in favor of the plaintiff and another who was deceased, the plaintiff was required to join any successor or successors to the deceased's interest as parties. [368-369]

BILL IN EQUITY filed in the Superior Court on May 11, 1973.

The suit was heard by *Dimond, J.,* on a master's report.

*William F. Lally* for the defendants.
*Robert W. Duquet* for the plaintiff.

KEVILLE, J.    By this bill in equity the plaintiff seeks to establish and enforce against her stepson and his wife a resulting trust in the home in which the plaintiff (to-

gether with her husband during the latter part of his life) has resided since 1960. The case was referred to a master whose report was confirmed by an interlocutory decree from which no appeal was taken. A final decree was entered ordering the defendants to convey the property to the plaintiff. The defendants have appealed.

We summarize the facts found by the master. In 1960 the plaintiff and one Anthony Russo, who was then a roomer in the plaintiff's home, decided to purchase land and a house in Rockland owned by the Veterans' Administration. The broker suggested that because Anthony's son Richard was a veteran,[1] the sale would be facilitated if Richard, rather than the plaintiff, should take title. For the accommodation of his father and the plaintiff, Richard agreed that he and his wife would take title. The consideration paid for the house consisted of a $1,250 down payment and a mortgage for the balance of $11,250. The plaintiff and Anthony, both of whom had been gainfully employed for many years, made the down payment from their "joint funds." The defendants signed the mortgage and note.

After the purchase, the plaintiff and Anthony lived in the house. In 1966 they were married. Together they spent about $3,450 improving the property "without the permission or knowledge" of the defendants. They also made all mortgage payments as they came due until Anthony's death. (He apparently left no will [see n. 3]). Since then the plaintiff has continued to live in the house and has made the mortgage payments.

The defendants never saw or visited the house before its purchase. They have made no mortgage payments, nor have they contributed to any of the improvements made in the property since its purchase. Until Anthony's death the defendants made no claim of ownership in the property. The plaintiff and Anthony periodically requested the de-

---

[1] Actually, as the master found, Richard "was never in the Armed Services, [and] didn't consider himself a veteran, although at one time he had been a member of the National Guard."

fendants to convey the property to them, but because of illnesses of the plaintiff and Anthony "from time to time" no transfer was ever effected. Richard and his wife disapproved of Anthony's marriage to the plaintiff and both objected to signing a deed with the plaintiff's name on it.

The defendants admit that the plaintiff and Anthony paid the whole purchase price for the property and it would appear that the defendants' execution of the note and mortgage was a loan of credit to the plaintiff and Anthony (see *Gerace* v. *Gerace,* 301 Mass. 14, 18 [1938]; *Murphy* v. *McKenzie,* 1 Mass. App. Ct. 553, 555-556 [1973]) rather than part of the consideration for the purchase (see *Kennerson* v. *Nash,* 208 Mass. 393, 398 [1911]; *Cohen* v. *Simon,* 304 Mass. 375, 378-379 [1939]; and *Saulnier* v. *Saulnier,* 328 Mass. 238, 240 [1952]). The defendants, however, rely on the oft stated rule that a "general contribution of a sum of money toward the entire purchase is not sufficient" to establish a resulting trust (*McGowan* v. *McGowan,* 14 Gray 119, 121 [1859][2]) and contend that the master's failure to make any finding as to the proportionate contributions of the plaintiff and Anthony toward the purchase prevents the imposition of a resulting trust.

It is true that in the absence of a finding as to the relative contributions of the plaintiff and Anthony a resulting trust cannot be established solely with respect to whatever interest in the property the plaintiff took in 1960. *Browdy* v. *Browdy,* 250 Mass. 515, 516-517 (1925). But that fact is not decisive of the case. It is well settled that where, as here, the whole purchase price is paid by several persons other than the grantee named in a deed, a resulting trust in the property arises in favor of the several persons collectively. *Bodman* v. *Martha's Vineyard Natl. Bank,* 330 Mass. 125, 129 (1953), and material cited. See *Quinn* v.

---

[2] See also *Druker* v. *Druker,* 268 Mass. 344, 340-341 (1929); *Moat* v. *Moat,* 301 Mass. 469, 472-473 (1938); *Druker* v. *Druker,* 308 Mass. 229, 230-231 (1941); *MacNeil* v. *MacNeil,* 312 Mass. 183, 187 (1942); *Ranicar* v. *Goodwin,* 326 Mass. 710, 713 (1951); *Tenczar* v. *Tenczar,* 332 Mass. 105, 106-107 (1954); *Campagna* v. *Campagna,* 337 Mass. 599, 603 (1958).

*Quinn*, 260 Mass. 494, 503. (1927). Cases such as *McGowan* v. *McGowan, supra,* are distinguishable. In those cases the grantee paid part of the consideration for the purchase and the person paying the remainder sought the imposition of a resulting trust with respect to only a proportionate share in the property. See *Bodman* v. *Martha's Vineyard Natl. Bank, supra.* See also *Quinn* v. *Quinn, supra,* at 502.

We acknowledge that the ordinary rule for determining the beneficial interest taken under a resulting trust by each of several contributors of the whole purchase price is that each takes an interest proportionate to his contribution. *Bodman* v. *Martha's Vineyard Natl. Bank, supra.* Without a finding as to the relative contributions of the plaintiff and Anthony, this rule would be inapplicable to the present case. But this fact would not prevent the imposition of a resulting trust; "there would ... [be] no justice in the alternatives of leaving title in ... [the grantee] or of returning title to ... [the grantor]." *Ibid.*

The master and the trial judge appear to have assumed that the plaintiff and Anthony purchased the property as joint tenants and therefore that, upon Anthony's death, the plaintiff owned the entire beneficial interest in the property. The master made no finding that they entertained such an intention or that they intended that the survivor of them should eventually become the owner of the entire beneficial interest.

When contributors to the entire purchase price make payment from their joint funds, and the evidence does not reveal either the relative contributions of each or the form of tenancy in which they intend to hold the property, a dual presumption comes into play. It is presumed that they take as tenants in common (*Edwards* v. *Edwards*, 39 Pa. 369, 384-386 [1861]; compare G. L. c. 184; § 7; *Burnett* v. *Pratt*, 22 Pick. 556, 557 [1839]; *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486, 490 [1927]; *Webber* v. *Rosenberg*, 318 Mass. 768, 770 [1945]) and in equal shares. *Shoemaker* v. *Smith*, 30 Tenn. 81, 83 (1850). *Edwards* v. *Edwards, supra,* at 384-386. Scott, Trusts, § 454.5 (3d ed. 1967). See *Dallagher* v. *Dallagher*, 171 Mass. 503 (1898). Compare

anno. 156 A. L. R. 515 (1945); Am. Law of Property, § 6.5 (1952); Powell, Real Property, § 601, n. 5 (1974); Tiffany, Real Property, § 426, p. 213 (3d ed. 1939).

On the truncated record before us the plaintiff and Anthony, therefore, could have taken whatever interest they purchased in the property only as tenants in common. See G. L. c. 184, § 7 (as amended through St. 1954, c. 395, § 1); *Cross* v. *Cross,* 324 Mass. 186, 188, 190 (1949); *Collier* v. *Napierski,* 357 Mass. 516, 521 (1970). Their subsequent marriage would not have affected their status as tenants in common (*Walsh* v. *Young,* 110 Mass. 396, 397-398 [1872]), and in the event of Anthony's death without a will, one-third of his interest in the property would have passed directly to the plaintiff and two-thirds to his issue. G. L. c. 190, § 1(2). *Russo* v. *Inzirillo,* 360 Mass. 862 (1971).

However, it is uncertain whether the plaintiff has joined all parties necessary in order to advance a claim to an interest in a resulting trust arising from the plaintiff's and Anthony's collective contribution to the purchase of the property, and any successor or successors to Anthony's interest will be necessary parties (*Browdy* v. *Browdy,* 250 Mass. 515, 516 [1925]; *Quinn* v. *Quinn,* 260 Mass. 494, 503-504 [1927]) to the further hearing which is required because the findings do not support the conclusion of the master or the final decree. Any additional issue of Anthony will of course be necessary parties (*Roper* v. *Murphy,* 317 Mass. 176, 178 [1944]), although the administrator of Anthony's estate, if there be one, will be such a party only if he has obtained a license from the Probate Court to sell Anthony's interest in the property. *Hooker* v. *Porter,* 271 Mass. 441, 445-446 (1930). See *Collins* v. *Curtin,* 325 Mass. 123 (1949).[3]

The record does not reveal whether Richard is Anthony's sole issue; and it is uncertain whether other persons, not

---

[3] Although the plaintiff alleges, and the defendants have not denied, that Anthony died intestate, other parties interested in Anthony's estate would not be foreclosed from claiming an interest in the property if it were in fact determined that Anthony died testate.

now before the court, may have acquired an interest in the property through Anthony. If there are such persons, they are to be added as parties and a further hearing held on any claim which they may advance with respect to whatever interest Anthony acquired in the property at the time of the purchase in 1960.[4] *Sutcliffe* v. *Cawley,* 240 Mass. 231, 238-240 (1921). *Home Dev. Co.* v. *Dupre,* 323 Mass. 98, 99-100 (1948). Mass.R.Civ.P.19(a)(2), 21, 365 Mass. 765, 767 (1974).

The interlocutory decree confirming the master's report and the final decree are reversed. The case is remanded to the Superior Court, in the first instance, to determine whether all necessary parties are before the court. If it is determined that they are not, the plaintiff is to have thirty days to move for the addition of those parties not now before the court. Any such motion is to be allowed as of course.

Secondly, further proceedings are to be had to determine whether at the time of purchase the plaintiff and Anthony had an understanding that they were taking the property as joint tenants or as tenants in common, or whether no such specific understanding existed between them.

If the evidence reveals that a joint tenancy was intended, the plaintiff would take the property as the surviving joint owner. If the understanding was that they were to be tenants in common, or in the absence of a specific showing of an understanding as to how they should take, the plaintiff would, as indicated earlier in this opinion, share in the property both as a tenant in common of an undivided fractional interest and as one of Anthony's heirs at law.

Whether such proceedings should be before the court or before a master is for the Superior Court to decide. In the event the latter course is pursued, the judge is to determine to what extent, consistent with this opinion, the report of the master is to be confirmed or set aside.

*So ordered.*

---

[4] Since the defendants claim complete title to the property, they obviously do not represent additional parties.