**REYNOLD QUEELEY, Plaintiff**

**v.**

**MARIE CHARLES, Defendant**

Civil No. 992/1977

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

May 10, 1979

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, *for plaintiff*

GEORGE S. ELTMAN, ESQ., Legal Services of the Virgin Islands, Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

MEMORANDUM OPINION AND JUDGMENT

Plaintiff seeks to establish a resulting or constructive trust in his favor to the extent of a one-half interest in Plot 14L, Estate Mon Bijou, St. Croix. By her counterclaim, defendant, record title holder of Plot 14L, seeks $13,650 from plaintiff as compensation for room and board provided to plaintiff and his two minor children for seven and a half years.

In 1967, the parties began living together in a common law marital relationship,[1] initially on premises defend-

---

[1] The relation is not recognized by law in this jurisdiction but is not uncommon as a matter of fact.

ant rented at Estate St. John, and later in a house constructed on the subject property at Estate Mon Bijou, where defendant's two children and two of plaintiff's children also resided. As the result of an argument between plaintiff and defendant in July of 1975, plaintiff and his children vacated the house. Two years later, in July 1977, he filed this action.

It is undisputed that the subject property was purchased from William T. Miller, defendant's employer at the time, pursuant to an installment contract for the purchase of land for a total price of $3,000, and that defendant provided the down payment. The other events surrounding the acquisition of the property and the construction of the house are in dispute.

Plaintiff claims that both he and defendant entered into the purchase agreement with an understanding between them that they would buy the land together, build together, and be joint owners. He asserts that the balance of the purchase price remaining after defendant's initial $900 down payment was paid by the proceeds of a $2,000 loan from the Bank of Nova Scotia made to the parties jointly; that he paid off the loan; that another loan from the Bank of Nova Scotia in 1971, in the amount of $3,700, also in their joint names, was used to pay for supplies and materials used in the construction of the house; that both he and defendant paid off this loan; that he and his friends provided the labor to build the home; that the conveyance to defendant, as her sole and separate property, was wholly unknown to him until 1974, when he first saw a tax bill; and that when confronted, defendant stated they would settle everything when plaintiff finished building the house.

Defendant's version of the events is that she entered into the purchase agreement with Miller, making the down payment in 1966, prior to meeting plaintiff. She alleges that after her union with plaintiff, she paid off the balance in in-

stallments and, upon completion of the contract in 1971, received title; that plaintiff knew title was in her name since he took the documents to the Recorder's Office for her; that she applied the proceeds of a $1,000 loan from the Bank of Nova Scotia toward paying for the property; that plaintiff's name was on the subsequent loans for $2,000 and $3,700, respectively, because the bank required a co-signer; that all loans were paid off with her money; and that she and plaintiff never had an understanding or agreement that he would have an ownership interest in the property.

I find as facts that both parties were working at the time they lived together and that both contributed money to the family unit. In a relationship such as theirs, some mixing of resources was inevitable. The conclusion is warranted that some of plaintiff's income went toward paying for the house and property. At the very least, his income would have defrayed some of defendant's living expenses, freeing her to use her money to pay for the house and property.

Notwithstanding this finding, the Court notes that plaintiff's monetary contribution could not have been more than minimal, although he did assist in the construction of the home, at least to the extent of recruiting volunteers and driving them to the property to work. His weekly income was $50 per week in 1968, and approximately $112 per week from 1969 through 1974.[2] With this money, he testified that he supported himself, his four children and, for the year 1968, his mother.[3] These obligations would have largely dissipated his income.

It is clear from the believable evidence that plaintiff was under no misconception about the state of the title and knew from the outset that he was not a joint owner. He acknowledged that not only was his name not on the deed,

---

[2] No evidence was introduced as to plaintiff's income in 1967.

[3] When the parties met in 1967, plaintiff was supporting his mother and his four children in Nevis. His mother died in 1968, and two of the children came to live with him and defendant in St. Croix. He continued supporting the two children who remained in Nevis.

it was not on the blueprints, the building permits, the tax rolls, the WAPA account, the account at Merwin True Value Center, or on any other papers which had reference to the ownership of the property.

On the other hand, the evidence does not establish that there was an agreement between the parties rgarding ownership of the property or the house. Defendant was clearly the prime mover behind the acquisition of the property and the construction of the house. She located and bargained for the land, negotiating a purchase price of $3,000 instead of the $4,000 asking price, since Miller, the owner, was her employer. Defendant and Albert Barnes, the builder who supervised the construction, procured the building materials. The account at Merwin True Value Center was in defendant's name, and it was she who signed a consent judgment for materials in the amount of $6,000. Defendant arranged for the necessary permits and blueprints. All these actions of defendant, when compared with the relative lack of involvement of plaintiff, go far to negate plaintiff's joint ownership agreement theory.

Plaintiff's own actions militate against acceptance of his theory. There was testimony at trial that plaintiff acknowledged to defendant's son that he, plaintiff, had no ownership interest in the land. Plaintiff's contentions that he and defendant entered into the land purchase agreement with Miller fly in the face of his admissions that he never once spoke to Miller about the agreement or had any negotiations with him. It defies logic to believe that, if there was such an alleged agreement and plaintiff actually believed he was a part owner of the property, he would have vacated the premises merely upon the single demand of defendant. He took no action to assert his supposed rights until two years later. His failure to show concern over title being in defendant's name until this late date is compelling evidence that there was no ownership agreement.

■ A resulting trust arises where a person makes or causes to be made a transfer of property under circumstances which raise an inference that he does not intend for the person taking or holding the property to have the beneficial interest therein. Restatement of Restitution § 160(19), Comment b.

■ A constructive trust results "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it . . . ." Restatement of Restitution § 160(19).

■ An extraordinary degree of proof is required to establish constructive and resulting trusts. 89 C.J.S., Trusts, §§ 137, 158. The courts have generally announced that they require "clear and convincing" evidence. Other judicial expressions are even more stringent in their demands. The requirement is sometimes stated to be that the facts supporting the creation of a trust must be proved "by greater weight than the mere preponderance of the evidence", or even "beyond a reasonable doubt". Masters v. Masters, 89 A.2d 576 (Md. Ct. App. 1952); Flanagan v. Herrett, 178 So. 147 (Fla. 1938); Woodward v. Cohron, 137 S.W.2d 497 (Mo. 1940).

The exact bases of plaintiff's claim of a resulting or constructive trust are his contentions that: (1) he contributed money for the purchase of the land; (2) there was an agreement between the parties that they would acquire the property for their joint benefit; (3) he was defrauded because his name was to be on the title; and (4) he contributed money and labor for the improvements.

Contentions (2) and (3) are without merit and are dismissed as contrary to the evidence.

■■ Plaintiff's first contention, that money was applied toward the purchase of the land, does not warrant the imposition of a resulting trust. This can arise only where

the facts and circumstances existing at the time of the transaction permit the reasonable inference that the parties intended a trust be established. 89 C.J.S., Trusts, § 102(b). A mere general contribution toward the purchase is not sufficient to show such an intention.

In order to establish a resulting trust in less than the entire fee in land purchased under an oral agreement to acquire the same for the joint benefit of two or more, based upon the payment of a portion of the purchase price, it must appear that a specified sum was paid for a definite share in the property. 135 A.L.R. 241, 246; Quinn v. Quinn, 260 Mass. 494, 157 N.E. 641 (1927).

Nor can a constructive trust be created by plaintiff's expenditures for the land. Since plaintiff clearly consented to the use of his money in the purchase of the land and there was never an agreement that he would have an ownership interest, the imposition of a constructive trust, which must be grounded on fraud or inequitable conduct in procuring title, is not justified.

■ Plaintiff's last contention, the claim of a trust arising from his contribution to the improvements, lacks merit since contributions for improvements are without legal effect to establish a trust. Trusts arise from the state of facts existing at the time title to the property is acquired and cannot arise from a subsequent expenditure for improving the property.[4] 89 C.J.S., Trusts, §§ 111, 139; Scott on Trusts § 472, Vol. 3; Page v. Joplin National Bank and Trust Co., 255 S.W.2d 821 (Mo. 1953).

■■ Making improvements on defendant's land might entitle plaintiff to an equitable lien if the improvements were induced by mistake or wrong, or if he conferred a

---

[4] I have examined the case of Felix v. Alexis, Civil No. 242/1972, D.C.V.I., relied on by counsel for plaintiff and find no conflict with the rule enunciated here. That case involved a situation in which two persons in a quasi marital relationship purchased the land jointly, and one person caused it to be conveyed to the other on the latter's implied promise to hold it for their joint purpose. A trust arose in favor of the person defrauded.

benefit upon defendant to his own financial detriment. Restatement of Restitution § 170. See also, Moore v. Moore (D.C.V.I., St. Croix, 1977), Civil No. 266/75. At best, whatever financial contribution was made by plaintiff is offset by the benefit he derived from his occupancy of the premises. Moore, supra. Since these elements are not present in the instant action, however, the imposition of an equitable lien, as well as the imposition of a trust, is denied. For these reasons, plaintiff is entitled to no relief pursuant to the complaint.

 Defendant, on the other hand, cannot recover on her counterclaim since the record is devoid of any evidence which would support the conclusion that the parties ever contemplated that plaintiff would pay for room and board or otherwise reimburse defendant for her services.

Because of the nature of their respective claims, the prevailing equities as they appear from the evidence, and the fact that each party is prevailing, at least to some extent, this Court will exercise its discretion and decline to grant attorney's fees. Accordingly, each litigant shall bear his or her own costs and attorney's fees.

A judgment consistent with this Memorandum Opinion shall enter forthwith.

### JUDGMENT

In accordance with the Memorandum Opinion entered on even date herewith, it is

ORDERED, ADJUDGED AND DECREED that plaintiff's complaint be and the same hereby is dismissed; and it is further

ORDERED, ADJUDGED AND DECREED that defendant's counterclaim be and the same hereby is dismissed; and it is further

ORDERED, ADJUDGED AND DECREED that each party shall bear his or her own costs and attorney's fees.